No. 81-176

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

MIKE NARDI, d/b/a MIKE NARDI REALTY,

        Plaintiff and Respondent,

    -vs-

LAWRENCE H. SMALLEY AND CAROL C. SMALLEY,
husband and wife,

        Defendants and Appellants,

    and

LAWRENCE H. SMALLEY and CAROL C. SMALLEY,
husband and wife,

        Defendants and Cross-Plaintiffs and
        Appellants,

    -vs-

JOSEPH ALTMAYER and VICTORIA ALTMAYER,
husband and wife,

        Third Party Defendants and Appellants.

Appeal from:  District Court of the Thirteenth Judicial District,
             In and for the County of Yellowstone, The Honorable
             William J. Speare, Judge presiding.

Counsel of Record:

    For Appellant:

        Gary E. Wilcox, Billings, Montana
        Paul G. Olsen, Billings, Montana

    For Respondent:

        Donald Herndon; Herndon, Harper & Munro,
        Billings, Montana

Submitted on Briefs:  December 30, 1981

Decided:  April 1, 1982

Filed: APR - 1 1982

*Thomas J. Kearney*

Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Plaintiff brought this action to collect a real estate commission against defendants, Smalleys. Smalleys, the sellers, impleaded third party defendants Altmayers, the buyers. Judgment was entered in favor of plaintiff against Smalleys and judgment was entered for Smalleys on their cross claim against Altmayers. Both Smalleys and Altmayers appeal.

On May 20, 1977, appellants, Smalleys and respondent, Nardi entered into a real estate broker's employment contract whereby Nardi agreed to attempt to sell "Smalley's Garden and Floral Center." The extent of the discussion and negotiations prior to the signing of the contract are disputed. Nardi claims that at least three hours were spent discussing the contract while Smalleys assert that only one-half hour was devoted to those conversations. No specific finding of fact regarding this issue was made by the District Court; however, the court did conclude that no act or omission by Nardi constituted any valid defense to his claim for the commission and that the contract was valid and enforceable.

The contract provided that the selling price would be "$220,000 + inventory" and that the broker was to receive 10 percent of the selling price as a commission. Other relevant sections of the contract state:

> "FOR VALUE RECEIVED, you hereby are employed to sell or exchange the property described hereon at the selling price and on the terms noted. In the event that you, or any other brokers cooperating with you, shall find a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept, or that during your employment you place me in contact with a buyer to or through whom at any time within 90 days after the termination of said employment I may sell or convey said property, I hereby agree to

-2-

pay you in cash for your services a commission
equal in amount to 10% of the above stated
selling price.  ($220,000 + inventory.)

                    *  *  *

"This agreement expires at midnight on November
20, 1977 but I further allow you a reasonable
time thereafter to close any deal on which
earnest money is then deposited.

                    *  *  *

"In case of suit or action on this contract,
I agree to pay such additional sum as the
court, both trial and appellate, may adjudge
reasonable as plaintiff's attorneys fees.

                    *  *  *

"THIS LISTING IS AN EXCLUSIVE LISTING and you
hereby are granted the absolute, sole and
exclusive right to sell or exchange the said
described property.  In the event of any sale,
by me or any other person, or of exchange or
conveyance of said property, or any part
thereof, during the term of your exclusive
employment, or in case I withdraw the author-
ity hereby given prior to said expiration date,
I agree to pay you the said commission just
the same as if a sale had actually been con-
summated by you."

Pursuant to this agreement, Nardi advertised the property

in the Billings Gazette as well as in the Minot and Fargo,

North Dakota newspapers and PreVue Magazine.  In addition,

Nardi showed the property to approximately ten prospective

buyers and talked to several others on the telephone.

The Altmayers contacted Nardi in mid-September 1977,

and expressed an interest in purchasing the floral shop.

After several meetings between Nardi, Smalleys and Altmayers,

a final buy/sell agreement was accepted on October 8, 1977.

At that point, Nardi ceased advertising the property.

The buy/sell agreement quoted the total purchase price

as $220,000 and also provided for an earnest money payment

of $1,000, which was paid.  The agreement stated that the

offer to purchase was contingent upon Altmayers selling

their property in Ohio prior to January 5, 1978.  Another

-3-

special provision stated that the sale was to include inventory of merchandise in the amount of $20,000 and that the selling price would be adjusted to reflect any discrepancy in the estimated value of the inventory. Finally, the agreement had a closing date of January 5, 1978, or thirty days thereafter, February 4, 1978, for completion of financing arrangements.

In mid-November, it became apparent that the Ohio property was not going to be sold prior to January 5, 1978. Therefore, Smalleys requested Nardi to once again advertise their property, but denied Nardi's request for an extension of the employment contract. Nardi kept in contact with both parties to the agreement and frequently contacted an Ohio broker regarding the progress of the sale of the Ohio property.

Altmayers did not sell their Ohio property prior to January 5, 1978. In mid-January, Smalleys and Altmayers reentered negotiations between themselves. They did not request assistance from Nardi, who claims to have made his assistance available to them. The District Court found that "[a]fter the contingency in the original Buy/Sell failed, the parties entered into direct negotiations to the exclusion of the broker, Mike Nardi, who was not notified or asked for assistance."

As a result of these negotiations, Smalleys and Altmayers executed, on January 31, 1978, the following documents for sale of Smalleys' shop: (1) a contract for deed; (2) a modification of the contract for deed; (3) an abstract of the agreement between the parties; and (4) a warranty deed for the property.

The contract for deed contained several pertinent clauses:

"(1) The purchase price of all the real and personal property was $200,000.

"(2) Part of the purchase price was to be paid by Altmayers' assumption of Mike Nardi's real estate fees incurred by Smalleys as a result of the sale of the property.

"(3) Once the State of Montana's condemnation proceedings regarding the highway in front of the store were final, the proceeds were to be used to pay $20,000 of the purchase price. If no proceeds were paid, $20,000 was to be added to the end of the contract.

"(4) On February 1, 1978, Altmayers were to:

"(a) determine the value of the store's inventory;

"(b) commence paying interest to Smalleys; and

"(c) be given possession of the store.

"(5) The Warranty Deed, Bill of Sale and other necessary documents were placed in escrow to be delivered to Altmayers upon full performance of the agreement."

The only terms missing from this contract were the value of the merchandise within the store and the value of the proceeds to be received as a result of the highway condemnation proceedings. Nevertheless, Smalleys and Altmayers claim that their contract for deed was unenforceable until the condemnation proceedings were final, August 17, 1978. Smalleys claim to have turned possession of the store over to Altmayers solely for convenience as Mrs. Smalley was ill and Mr. Smalley frequently was out-of-town.

If the contract was enforceable on January 31, 1978, neither the 90 day extension period of the real estate broker's employment contract, nor the 30 day extension for financing of the original buy/sell agreement had expired. Therefore, Nardi would arguably be entitled to his commission. If the contract was not enforceable until August 17, 1978, Nardi arguably would not be entitled to a commission.

-5-

The issues presented to this Court for review are numerous.

(1)   Whether Altmayers have standing to proceed as appellants?

(2)   Whether the District Court had jurisdiction over this case since plaintiff Nardi did not "first allege" that he was a duly licensed real estate broker in the State of Montana pursuant to section 37-51-401, MCA?

(3)   Whether Nardi, in his capacity as a real estate broker, breached his fiduciary duty to Smalleys, the listing owners, by failing to completely disclose the terms and conditions of the real estate broker's employment contract?

(4)   Whether Nardi, in his capacity as a real estate broker, abandoned his employment under the real estate broker's employment contract with Smalleys, thereby freeing Smalleys to sell the property free from commission liability to Nardi?

(5)   Whether the buyers and sellers entered into an enforceable contract within 90 days after the expiration of the real estate broker's employment contract, thus entitling Nardi to his commission?

(6)   If Nardi is entitled to a commission, should the commission be on the sale of the inventory also?

(7)   Is Nardi entitled to attorney fees?

The first two issues presented to this Court are without merit. Joseph and Victoria Altmayer were properly joined as parties to the District Court proceedings as they signed a contract to pay all real estate fees owed Nardi by Smalleys. The judgment of the District Court included an order directing Altmayers to pay Smalleys $21,520. The Altmayers are entitled to appeal that judgment pursuant to Rule 1, M.R.App.Civ.P.

-6-

Section 37-51-401, MCA, requires a real estate broker who brings an action in a court for collection of compensation to first allege and prove himself to be a licensed real estate broker in the State of Montana. Although Nardi did not allege himself to be a licensed broker in his initial complaint, the court's pretrial order contained an amendment to the complaint stating that Nardi was at all material times a licensed real estate broker in Montana. In addition, at the start of the trial, Nardi introduced his broker's license as plaintiff's exhibit number one. None of the appellants objected to the pretrial order or plaintiff's exhibit number one. The order and the exhibit adequately prove Nardi to be licensed pursuant to the statute. Therefore, Nardi had standing.

Issues three and four relate to the duties owed by a real estate broker to his employer, the potential seller. In Carnell v. Watson (1978), 176 Mont. 344, 578 P.2d 308, 312, this Court recognized a fiduciary relationship between a real estate broker and the seller. Appellants claim that Nardi breached that fiduciary duty by failing to fully disclose the terms of the real estate broker's employment contract. The District Court held:

> "No act or omission by the plaintiff, Mike Nardi d/b/a Mike Nardi Realty, shown by the evidence constituted any valid defense, either in whole or in part, to the claim for a real estate brokerage commission on the sale of Smalley's Floral and Garden Center."

We uphold the District Court's determination. Although neither the exact length nor the exact content of the initial meeting were ever completely established, both parties did agree that they met for at least one-half hour to discuss the employment contract.

Montana case law indicates that the fiduciary duty between a broker and a seller is breached when the seller is

-7-

fooled or deceived by the contract or does not understand the contract. Flemmer v. Ming (1980), ____ Mont. ___, 621 P.2d 1038, 37 St.Rep. 1916; First Trust Company of Montana v. McKenna (1980), ___ Mont. ___, 614 P.2d 1027, 37 St.Rep. 1026. Mr. Smalley testified on cross-examination that he was familiar with standard broker employment contracts such as the one used by Nardi, that he was not fooled or deceived by the contract and that he understood the contract and knew what he was signing. Furthermore, there is no evidence that Nardi, in breach of the fiduciary relationship, gained an advantage which could result in constructive fraud under section 28-2-406, MCA.

The instant case is distinguishable from Lyle v. Moore (1979), ____ Mont. ___, 599 P.2d 336, 36 St.Rep. 1307. In Lyle, this Court found a breach of the fiduciary duty when the broker failed to disclose to the seller that should the seller withdraw the broker's authority to sell the property or sell the property himself, the seller would be liable to the broker for his commission. In the instant case, the breach of the fiduciary duty is based on the broker's failure to disclose whether or not his 10 percent commission included 10 percent of the inventory price. The contract called for a commission to be paid equal to 10 percent of the "selling price." The selling price here was $200,000. The trial court applied the clear terms of the contract.

Appellants contend Nardi abandoned his listing. Abandonment is a question of fact. In its findings of fact, the District Court stated: "After the contingency in the original Buy/Sell failed, the parties entered into direct negotiations to the exclusion of the broker, Mike Nardi." The court went on to conclude, "[t]he plaintiff, Mike Nardi, did not abandon

-8-

his agency agreement." There is substantial credible evidence to support this conclusion of the District Court. Mr. Nardi testified that he remained in contact with the parties both prior and subsequent to January 5, 1981, the date established for fulfillment of the contingency. After January 5, 1981, Nardi was told by all appellants that there was nothing he could do as they were awaiting finalization of the highway condemnation proceedings and/or valuation of the inventory. We uphold the District Court's conclusion that no abandonment occurred.

Since Nardi did not abandon his duties under the employment contract or breach any fiduciary duty owed by him to the seller, he is entitled to receive his commission if the contract by which Altmayers purchased the floral shop was final within the time stipulated in Nardi's employment contract. The employment contract provided for payment of the commission should Nardi, during his employment, place Smalleys "in contact with a buyer to or through whom at anytime within 90 days after the termination of said employment I (Smalleys) may sell or convey such property." The contract terminated on November 20, 1977. Ninety days thereafter was February 18, 1978.

A contract for deed was executed by Smalleys and Altmayers on January 31, 1978. Two financial terms within the contract were left blank. The District Court found that they "were left blank to be determined after the inventory value had been determined and the condemnation payment from the State of Montana had been received and credited as agreed." Therefore, the only missing terms involved the method of payment, a collateral issue to this contract. The amount of payment was set, $200,000. "Matters which are subsidiary, collateral,

-9-

or which do not go to the performance of the contract, are not essential and do not have to be expressed in the contract." Van Atta v. Schillinger (1981), ___ Mont. ___, 625 P.2d 73, 38 St.Rep. 426. Even without the missing "method of payment" terms, the contract for deed was valid and enforceable as of January 31, 1978.

The employment contract between Nardi and Smalleys stated that Nardi would be paid a commission upon completion of a sale of Smalleys' shop to an individual with whom Nardi had established contact, if the sale occurred within 90 days of November 20, 1977. A sale is defined in section 30-11-101, MCA, as:

> "Sale defined. Sale is a contract by which, for a pecuniary consideration called a price, one transfers to another an interest in property."

The contract for deed is a sale as the buyer receives an equitable interest in the shop in return for an obligation to pay seller $200,000. The contract for deed was valid and enforceable well within the 90 day period. The broker, Nardi, is entitled to his commission.

The original employment contract stated that the broker would be entitled to a commission of 10 percent of the selling price. The selling price was stated to be "$220,000 + inventory." The final contract for deed had a selling price of "$200,000 including inventory." In both instances, the inventory was included under the term "selling price." In the first contract, the value of the inventory was unknown so no figure was attached to it. However, since "inventory" was initially included under the selling price, it was reasonable for the trial court to determine the broker's commission on the basis of the final selling price of $200,000,

-10-

which included the purchase price of both the real property and inventory involved.

Finally, the employment contract states that the seller will be liable for reasonable plaintiff's attorney's fees should an action be brought on the contract. An action was brought, the District Court properly determined plaintiff's attorney's fees and we uphold its determination.

Judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-