No. 84-210

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

LLOYD A. TWITE and MARY C. TWITE,

        Plaintiffs and Appellants,

   -vs-

FIRST BANK (N.A.) WESTERN MONTANA
MISSOULA,

        Defendant and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Green, MacDonald, Wagner & Kirscher; Joan Newman argued,
        Missoula, Montana

    For Respondent:

        Garlington, Lohn & Robinson; George Goodrich argued,
        Missoula, Montana

Submitted:   November 1, 1984

Decided:   December 31, 1984

Filed: DEC 31 1984

*Ethel M. Harrison*

—————————————————
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a summary judgment granted to respondent by the District Court of the Fourth Judicial District, County of Missoula. We vacate the summary judgment and remand for trial.

## Issue

Appellants set forth five issues for review in their opening brief but we will decide this case by addressing only the following question: did the District Court err in granting summary judgment when material issues of fact emerged at the hearing on motion for summary judgment?

## Facts

On June 29, 1979, a promissory note was executed by Thomas R. Napton payable to First Bank Western Montana Missoula (Bank) for the sum of $480,000. On July 10, 1979, Lloyd A. and Mary C. Twite executed a document in favor of Bank entitled "Guaranty." The document is a standard form of the Bank. The blanks in the form were filled out for the amount and the following language was typed in at the bottom of the page: "This guarantee is expressly limited to FIRST Eighty Thousand Dollars ($80,000.00) of Debtor's Four Hundred Eighty Thousand Dollar Note Dated June 29, 1979, or any renewal or extension of any portion thereof." The meaning of this language is the subject of this appeal.

The guaranty was part of a construction contract between Twite and Napton. Twite was to build certain houses for Napton and also provide a guaranty for a portion of the loan Napton was obtaining from the Bank. $2,500 was paid by

Napton to Twite in consideration for the guaranty. When Napton discussed with Twite the need for the guaranty, Twite was left with the impression that the obligation of Twite would be limited to the sum of $80,000 until such time as the Napton-Bank note was reduced to $400,000, at which time Twite's obligation would cease. Representatives of the Bank were not present during these discussions. The Napton-Twite agreement provides that "Twite shall act as a guarantor of said notes to the extent of Eighty Thousand Dollars ($80,000.00)." This agreement did not specify that Twite's obligation was limited to the first $80,000 of the note. However, the Napton-Twite agreement granted to Twite the right to assume the entire project and the underlying debt. In the alternative, Twite could pay $80,000 to the Bank and in that event Napton would execute a note to Twite in the sum of $80,000 secured by a second mortgage covering certain lots. If the houses in the project did not sell, Twite planned to buy two of the houses at $56,000 each. This amount could then be paid on the note thereby reducing the loan to less than $400,000. At that time, Twite thought his obligation under the guaranty would be extinguished.

The District Court found that the $480,000 Napton-Bank note had been renewed and that at the time of this action, more than $80,000 of the balance had been paid. The purpose of the guaranty was to insure that the Bank would recover the full amount of the note even if the underlying collateral would be insufficient.

Before the meeting when the guaranty was executed by Twite, officers of Bank had inserted the typed portion at the bottom of the guaranty. Twite did not recall statements made to him by the representatives of the Bank, nor did he ask the

3

officers what the language was intended to mean. The court also found that Twite saw the typed portion of the guaranty and thought it confirmed what was verbalized to him. Twite did not ask for an explanation of the typed portion at closing. He testified the typed portion read the way it was explained to him, and was cut and dry. Twite testified the typed portion said exactly what he wanted it to say.

Twite thought he was guaranteeing the first $80,000 of the loan. To him that meant once the loan balance went below $400,000 he would no longer be held responsible. He was pleased with this arrangement because he thought if he was called upon to pay $80,000 he would simply buy two of the nine houses that were being built. That would have the effect of reducing the loan balance to an amount less than $400,000 and he would be off the hook. He would then sell the two homes and recover his money.

The Bank, on the other hand, had a different idea. The Bank understood the guaranty to mean that Twite would be responsible for $80,000 in case of Napton's default, regardless of the balance of the loan. The Bank felt it could get anyone to buy two houses and reduce the loan balance below $400,000 so it certainly did not expect Twite to do that. The Bank was relying on all nine houses and Twite's guaranty as collateral for the loan.

SUMMARY JUDGMENT

Appellants and respondent are in marked disagreement about the meaning of the language "limited to FIRST Eighty Thousand Dollars ($80,000.00) of Debtor's Four Hundred Eighty Thousand Dollar Note Dated June 29, 1979, or any renewal or

4

extension of any portion thereof." It was error for the District Court to grant summary judgment when the parties were in such sharp disagreement. The matter should have been submitted to a jury.

> "It is true that the purpose of the summary judgment procedure is to encourage judicial economy through the elimination of an unnecessary trial. However, it is also true that the procedure is never to be a substitute for trial if a factual controversy exists. Engebretson v. Putnam (1977), 174 Mont. 409, 571 P.2d 368; Duncan v. Rockwell Mfg. Co. (1977), 173 Mont. 382, 567 P.2d 936; Bonawitz v. Bourke (1977), 173 Mont. 179, 567 P.2d 32." Reaves v. Reinbold (Mont. 1980), 615 P.2d 896, 37 St.Rep. 1500.

"Summary judgment is usually inappropriate where the intent of the contracting parties is an important consideration." Fulton v. Clark (1975), 167 Mont. 399, 538 P.2d 1371. We therefore vacate the summary judgment and remand for a trial on the merits.

_____
                    Justice

We concur:

_____
Chief Justice

_____


_____


_____


_____
Justices