No. 87-44

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

ELLINGSON AGENCY, INC.,

Plaintiff and Respondent,

-vs-

OTTO BALTRUSCH, JR., and CARL
BALTRUSCH,

Defendants and Appellants.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Astle & Astle; David L. Astle, Kalispell, Montana

For Respondent:

Jeffrey D. Ellingson; Trieweiler Law Firm; Whitefish,
Montana
Warden, Christiansen, Johnson & Berg; Stephen C. Berg,
Kalispell, Montana

Submitted on Briefs: July 1, 1987

Decided: September 15, 1987

Filed SEP 15 1987

_Ethel M. Harrison_

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendants Carl and Otto Baltrusch appeal the judgment of the Eleventh Judicial District Court, Flathead County, which awarded to plaintiff Ellingson Agency, Inc., a broker's commission, attorney fees and interest in the total amount of $148,308.91 and dismissed defendants' counterclaim. We affirm in part and reverse in part.

Three issues are presented for our review:

1. Did the District Court err when it granted summary judgment in favor of Ellingson?

2. Did the District Court err when it granted Ellingson's motion for summary judgment dismissing the Baltrusches' counterclaim?

3. Did the District Court err when it compounded interest in violation of § 25-9-205, MCA?

This is an action for a real estate commission based on an exclusive listing agreement between Ellingson Agency, Inc. (Ellingson), and Carl and Otto Baltrusch. Prior to November 6, 1979, the Baltrusch brothers had entered into a contract for deed to purchase the Gibson Shopping Center in Kalispell from Stephen and Patricia McAfee. On November 6, 1979, Carl Baltrusch, representing himself and his brother, signed two exclusive one-year listing agreements with Ellingson covering the sale of the Gibson property. (The listing agreements were identical but covered different portions of the Gibson property; hereinafter, they will be referred to as a singular document.) Marvin Bethea, who was to be the sales agent for the sale, signed the agreement on behalf of Ellingson.

From November 1979 through June 1980, Bethea devoted substantial time and expense attempting to locate buyers for the Gibson property. On January 11, 1980, the Baltrusch brothers received a notice of default from the McAfees

2

requesting the Baltrusch brothers bring current their taxes and special improvement district assessments on the Gibson property or face cancellation or specific performance. In February 1980, the Baltrusch brothers informed Ellingson of McAfees' notice of default. Ellingson was aware that the Baltrusches were being pressured to transfer title in lieu of foreclosure. However, Ellingson did not inform the Baltrusch brothers that upon transfer in lieu of foreclosure, Ellingson would seek a brokerage fee.

Prior to June 3, 1980, the Baltrusches informed Ellingson that they planned to transfer the property in lieu of foreclosure. Ellingson requested that the Baltrusches get a ten-day extension before transferring the property. The Baltrusches deeded the property contingent upon such a ten-day extension. However, Ellingson failed to obtain a buyer.

On June 3, 1980, the Baltrusch brothers by quitclaim deed conveyed the Gibson property back to the McAfees in lieu of cancellation or specific performance and the McAfees released them of all further liability under the contract. On May 4, 1982, Ellingson filed suit against the Baltrusch brothers alleging it was entitled to a commission under the exclusive listing agreement on the conveyance to the McAfees. On September 20, 1983, Ellingson moved for summary judgment. Seventeen months later, on March 25, 1985, the District Court entered summary judgment in favor of Ellingson. The court found the listing agreement to be clear and unambiguous and that Ellingson was entitled to commission on the conveyance of the Gibson property under the terms of the listing agreement. The court awarded Ellingson a commission of $86,862.84 plus interest from June 3, 1980, and costs of suit.

Following summary judgment the District Court granted the Baltrusches leave to amend and file a counterclaim. In

3

the counterclaim, the Baltrusch brothers alleged that Ellingson had violated the Montana Real Estate Brokers and Salesman Act and breached its duty of good faith and fair dealing. The Baltrusches alleged Ellingson knew of the impending return conveyance of the Gibson property but failed in its duty to inform the Baltrusches it would demand a commission on the conveyance. After further discovery, both parties moved for summary judgment on the counterclaim. On August 26, 1986, the court granted summary judgment in favor of Ellingson and dismissed Baltrusches' counterclaim. Final judgment was entered on October 9, 1986, in the total amount of $148,308.91, which included interest at 10 percent on the amount of judgment entered March 25, 1985. Baltrusches' motion to alter or amend the judgment was deemed denied, and this appeal followed.

## Issue 1

Did the District Court err when it granted summary judgment in favor of Ellingson?

The first issue is whether summary judgment in favor of Ellingson on the issue of its entitlement to a commission was proper. Pursuant to Rule 56(c), M.R.Civ.P., if there is no genuine issue of material fact and the evidence before the court shows the moving party is entitled to judgment as a matter of law, summary judgment is proper. In this instance, the District Court found the exclusive listing agreement to be clear and unambiguous, that Ellingson was entitled to its commission under the contract, and that the Baltrusches raised no affirmative defenses to the contract. We disagree with the District Court that there was no genuine issue of material fact and that Ellingson was entitled to judgment as a matter of law.

4

The exclusivity provision in the listing agreement executed by the parties provides:

> This listing is an exclusive listing and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any <u>sale</u>, by me or any other person, or of <u>exchange</u> or <u>conveyance</u> of said property, or any part thereof, during the term of your exclusive employment, or in the case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the same commission, just the same as if a sale had actually been consummated by you. [Emphasis added.]

The listing agreement covered the period from November 6, 1979, to November 6, 1980.

On January 11, 1980, the Baltrusches received notice of default from sellers, Stephen and Patricia McAfee. The McAfees continued to pressure the Baltrusches to transfer the property in lieu of foreclosure. The Baltrusch brothers notified Ellingson in February 1980 that the McAfees had served notice of default. The Baltrusches also notified Ellingson that the McAfees were pressuring them to "give the property back." On June 3, 1980, the Baltrusch brothers transferred quitclaim title to the McAfees in lieu of foreclosure. It appears from the partial transcript of Otto Baltrusch, Jr.'s deposition that prior to June 3, 1980, Ellingson requested that Baltrusches obtain a ten-day extension from McAfees to enable Ellingson to find a buyer for the Baltrusch property. Additionally, it appears that the McAfees by letter dated June 3, 1980, granted a ten-day extension. However, Ellingson was unable to find a buyer.

The District Court found "the Baltrusches conveyed the Gibson property thereby effectively withdrawing the authority of the Ellingson agency to continue to try to sell the

5

property . . ." On review we are presented with the question of whether the District Court erred when it held that a transfer of title in lieu of foreclosure constitutes a sale, exchange or conveyance within the intended meaning of the listing agreement, thereby entitling Ellingson to a commission.

This Court has previously examined exclusive listing agreements identical to the agreement in the present case. In Payne v. Buechler (Mont. 1981), 628 P.2d 646, 38 St.Rep. 799, the owner unilaterally terminated an exclusive listing agreement, then twelve days later sold the property which had been covered under the agreement. In finding the broker entitled to his commission, we stated:

> . . . once the broker began performance under the written agreement by expenditure of time, efforts and money to attract a purchaser on the owner's terms, the written agreement became bilateral and binding on both parties. It could not be unilaterally terminated by the owner without payment of the brokers' commission.

Payne, 628 P.2d at 650, 38 St.Rep. at 804.

In Nardi v. Smalley (1982), 197 Mont. 321, 643 P.2d 228, this Court held the owner bound by the terms of the exclusive listing agreement and the broker entitled to his commission. In Nardi, the owners executed documents for the sale of the property seventy days after the listing agreement expired but to a buyer found by the broker. The listing agreement provided for the broker's commission on a sale to a buyer found by the broker, at the agreed price, within ninety days of the termination of the listing agreement. We held the terms of the listing agreement entitled the broker to his commission and that the broker had not breached his fiduciary duty to disclose all material terms.

6

In John Whiteman & Co. v. Fidei (Pa. 1954), 106 A.2d 644, 646, the Superior Court of Pennsylvania held a buyer's receipt of $1,000 coupled with the transfer of title in lieu of foreclosure constituted a "sale or exchange." Whiteman was later distinguished by Felbinger and Co. v. Traitoros (Ill. 1979), 34 N.E.2d 1283, 1288. In Felbinger, the Illinois Appellate Court held that when an exclusive realtor's listing contract does not state whether a transfer of title in lieu of foreclosure constitutes a sale, the term sale is susceptible to differing interpretations. Felbinger reversed and remanded the case to the District Court and ordered the court to admit parol evidence of the parties' intent.

"Where an ambiguous term is used, the intent of the parties will govern its construction and extrinsic evidence can be used to discover that intent." Adams v. Chilcott (1979), 182 Mont. 511, 517, 597 P.2d 1140, 1144. A court should look at the whole contract and its purpose in determining intent and is not bound by any single provision or expression. Gropp v. Lotton (1972), 160 Mont. 415, 421, 503 P.2d 661, 664-665. When uncertainty in a written instrument exists, the provisions should properly be construed against the party causing the uncertainty. St. Paul Fire & Marine Ins. Co. v. Cumiskey (1983), 665 P.2d 223, 229, 40 St.Rep. 891.

Implicit in the District Court's findings of fact and conclusions of law is the finding that it was the intention of the parties to the contract that the terms sale, exchange or conveyance would include a deed in lieu of foreclosure. A sale is defined by § 30-11-101, MCA, which provides:

> Sale defined. Sale is a contract by which, for a pecuniary consideration called a price, one transfers to another an interest in property.

7

In the case at hand, the Baltrusch brothers gave up their entire interest in the Gibson property and forfeited all payments made to the McAfees. Accordingly, we hold the Baltrusches' transfer of title does not constitute a sale pursuant to § 30-11-101, MCA.

Exchange has been defined as a "contract by the terms of which specific property is given in consideration of the receipt of property other than money." Capps v. Mines Service (Or. 1944), 152 P.2d 414, 416; see also, § 30-11-112, MCA. Black's Law Dictionary defines conveyance as a "transfer of title to land from one person, or class of persons, to another by deed." The District Court found the Baltrusches conveyed the Gibson property, thereby violating the exclusive listing agreement. It is arguable that a technical conveyance occurred when the Baltrusches transferred the property in lieu of foreclosure. However, the record is replete with evidence that the term conveyance had different meanings to respondent and appellants. Both testimony and actions of the parties support this premise.

It follows that the term "conveyance" has no fixed or invariable meaning, but is to be interpreted in accord with the manifest intention of the parties. Parol evidence is therefore necessarily admissible to demonstrate and explain the ambiguity. We have held that "summary judgment is usually inappropriate where the intent of the contracting parties is an important consideration." Twite v. First Bank (N.A.), Western Montana (Mont. 1984), 692 P.2d 471, 472, 41 St.Rep. 2518, citing Fulton v. Clark (1975), 167 Mont. 399, 404, 538 P.2d 1371, 1374.

In the case at bar, the record reflects that the Baltrusches were unaware that a transfer of title in lieu of foreclosure would constitute a conveyance entitling Ellingson to a commission. Respondent Ellingson did not inform the

8

Baltrusches of that fact despite its fiduciary duty to dis-
close, until the filing of this lawsuit.   Lyle v. Moore
(1979), 183 Mont. 274, 277, 599 P.2d 336, 338.   Therefore, a
latent ambiguity exists, and parol evidence is necessary to
determine the intention of the parties.   Section 28-3-301,
MCA.   We reverse and remand this issue to the District Court
with instructions to vacate summary judgment granted in favor
of respondent Ellingson.

Issue 2

Did the District Court err when it granted summary
judgment dismissing the Baltrusches' counterclaim?

After granting respondent Ellingson's initial motion
for summary judgment, the District Court granted appellants
leave to amend and file a counterclaim.   The Baltrusch broth-
ers alleged in their counterclaim that Ellingson violated its
fiduciary duty owed by a broker to a customer to disclose all
material facts.   On August 26, 1986, the District Court
granted Ellingson's motion for summary judgment against the
Baltrusches' counterclaim.

A fiduciary relation exists between a real estate
broker and his client.   Carnell v. Watson (1978), 176 Mont.
344, 350, 578 P.2d 308, 312; Lyle v. Moore ((1979), 183 Mont.
274, 277, 599 P.2d 336, 337.   A real estate broker holds the
affirmative duty to disclose all material facts.   Flemmer v.
Ming (Mont. 1980), 621 P.2d 1038, 1043, 37 St.Rep. 1916.

The District Court, in its August 26, 1986, findings of
fact and conclusions of law found that the contract was clear
and unambiguous and that Ellingson had "no duty to advise
[the Baltrusches]."   Earlier, we held that the District Court
erred when it found the listing agreement was clear and
unambiguous.   We conclude there may have been a genuine issue

9

of material fact as to whether Ellingson breached a fiduciary duty to disclose. Rule 56(a), M.R.Civ.P.

The District Court erred when it granted respondent's motion for summary judgment, thereby dismissing the Baltrusches' counterclaim. We reverse and remand this issue and instruct the District Court to deny Ellingson's motion for summary judgment against the Baltrusches' counterclaim.

Issue 3

Did the District Court err when it compounded interest in violation of § 25-9-205, MCA?

Although we are not required to review this issue, we choose to address it for judicial economy and to assist the parties in the event of further judicial proceedings involving this issue.

In its March 25, 1985, summary judgment order, the court awarded Ellingson its commission of $86,862.84 plus interest at 6 percent on that amount from the date of breach to the date of judgment. The total judgment amount entered on March 25, 1985, was $111,936.45. The second summary judgment dismissing Baltrusches' counterclaim was entered August 26, 1986. The court found Ellingson entitled to judgment at 10 percent on the $111,936.45 judgment. The Baltrusches contend the interest at 10 percent on the initial judgment, which included a 6 percent interest award, is in violation of § 25-9-205, MCA. Section 25-9-205, MCA, provides:

> (1) Except as provided in subsection (2), interest is payable on judgments recovered in the courts of this state at the rate of 10 percent per annum and no greater rate. Such interest must not be compounded in any manner or form.

10

(2) Interest on a judgment recovered in the courts of this state involving a contractual obligation that specifies an interest rate must be paid at the rate specified in the contractual obligation.

In this case, Ellingson's damages were ascertainable on the date of breach, and it was entitled to interest thereon pursuant to § 27-1-211, MCA. The legal interest rate was 6 percent pursuant to former § 31-1-106, MCA. The District Court correctly included 6 percent interest from the date of the breach to the March 25, 1985, judgment. Section 25-9-204, MCA; Gallatin Valley Elec. Ry. v. Neible (1919), 57 Mont. 27, 186 P. 689. On that date a judgment amount was entered, and Ellingson was entitled to 10 percent interest on the judgment under § 25-9-205, MCA. This is not compound interest; rather, it is interest on the judgment, and the District Court did not err in making the award. See, Ehly v. Cady (Mont. 1984), 687 P.2d 687, 696, 41 St.Rep. 1611, 1621.

The method used by the District Court in calculating interest is correct. Summary judgment motions granted by the District Court (1) in favor of respondent Ellingson's claim and (2) denying appellant Baltrusches' counterclaim are reversed and remanded with instructions to vacate.

_J. A. Turnage_
Chief Justice

We concur:

_John Conway Harrison_

_John C. Sheehy_

_Fred J. Weber_

11

_William E. Hursh_

_P. C. Sutherson ._
Justices

12

I dissent to the majority's decision on Issues 1 and 2. The terms of the listing agreement entitle Ellingson to a commission upon exchange of the contract property. The pertinent part of the agreement reads: "In the event . . . of exchange or conveyance of said property, . . . during the term of your exclusive employment . . . I agree to pay . . .". Thus, the outcome of the commission issue depends on whether or not an exchange has occurred. Section 30-11-112, MCA, defines an exchange as follows:

> Exchange is a contract by which the parties mutually give or agree to give one thing for another, neither thing nor both things being money only.

Here the Baltrusches conveyed their vendee's or equitable interest in the property to McAfees. In exchange the McAfees released them from substantial monetary payments, due currently and in the future, under the contract. McAfees obtained the property back and Baltrusches obtained the release. Under Montana law, an exchange occurred. They gave one thing for another, neither thing being money. The exchange triggered the commission provided for by the agreement.

The terms of the listing agreement are clear. The signed listing agreement was the final contract between the parties. There is no ambiguity as to its terms. The Baltrusches are experienced businessmen. The admission of parol evidence to determine the intent of the parties violates the parol evidence rule. Any agreement reduced to writing is the final agreement of the parties and if not ambiguous should stand.

As to the second issue, Baltrusche's counterclaim should have been dismissed. Ellingson did not owe a fiduciary duty as broker to affirmatively disclose to Baltrusches that a

13

commission would be due in event of an exchange or conveyance back to McAfees. The listing agreement already provided for the commission.

A fiduciary duty between broker and seller is breached when the seller is fooled or deceived by the contract or does not understand its content. Nardi v. Smalley (Mont. 1982), 643 P.2d 228, 39 St.Rep. 606. None of these elements appear here. With the myriad of real estate transactions involving pecuniary sales or exchanges including not only real property but personal and mixed property, and all of the various combinations thereof, an expansion of the fiduciary duty to affirmatively disclose when it is clear in the parties' written agreement, opens the door to extensive uncertainty of the law. The District Court was correct in dismissing Baltrusches' counterclaim.

Justice R.C. McDonough

14