No. 87-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

BETTY A. McCRACKEN BILLS; DARRELL
McCRACKEN; DAVID McCRACKEN; JUDY
SOUTH; and CAROL EHRESMAN,

              Plaintiffs and Appellants,

    -vs-

HANNAH, INC., a/k/a HANNAH ASSOCIATES
a/k/a HANNAH ERA REAL ESTATE; ELWOOD E.
HANNAH, individually and as agent for
HANNAH, INC.; et al.

              Defendants and Respondents.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Olsen, Christensen & Gannett; Damon L. Gannett and
        Marvin Ventrell argued, Billings, Montana

    For Respondent:

        Emmons & Coder; Robert J. Emmons argued for Smedsrud,
        Great Falls, Montana
        Anderson, Brown, Gerbase, Cebull, Fulton, Harman &
        Ross; John Russell argued for Hannah, Billings,
        Montana

---

Submitted:    November 30, 1987

Decided:    February 9, 1988

Filed: FEB 9 - 1988

_Ethel M. Harrison_
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

The District Court of the Thirteenth Judicial District granted summary judgment upon motion by respondents Hannah Incorporated and Conrad's Real Estate and Insurance (Hannah and Conrad). In a memorandum accompanying the summary judgment order, the lower court held that no material questions of fact existed, and that Hannah and Conrad were entitled to summary judgment as a matter of law. Darrell and David McCracken, Betty McCracken Bills, Judy South, and Carol Ehresman, (McCrackens), appeal contending that the lower court erred by finding that no material questions of fact existed. Hannah and Conrad cross appeal contending that the statute of limitations and McCrackens' own negligence bar all claims against Hannah and Conrad. We affirm the District Court's decision to grant Hannah and Conrad summary judgment, and thus moot the issues presented on cross appeal.

The facts relevant to this appeal are as follows: McCrackens listed their farm for sale with Hannah. The listing contract allowed Hannah to associate with other realtors. Hannah associated with Conrad, and the two realty offices agreed to split the commission for the sale.

Conrad Realty's agent, Smedsrud, through an acquaintance, found buyer Melcher Corporation. (Melcher) Negotiations between Melcher and McCrackens commenced and resulted in offers McCrackens rejected. During the negotiations with Melcher, McCrackens were represented by two lawyers and an accountant.

Melcher's initial offers proposed that Melcher Corporation make a down payment and secure the balance of the farm's purchase price with bonds bought on a margin loan from Melcher's broker. In return the McCrackens were to provide

2

Melcher with a clear deed to the farm. A provision in Melcher's initial offers also provided that interest accruing on the bonds would first be applied to satisfy the margin loans encumbering the bonds.

Bonds purchased on margin are generally subject to margin calls by the bond broker who makes the margin loans. If the margin call is made by the broker, the purchaser of the bonds must increase the equity he or she holds in the bonds to prevent the broker from selling the bonds.

McCrackens objected to the provision providing for payment of bond interest for Melcher's margin loans. In the offer that McCrackens accepted, the purchase price was increased and reference to payment of bond interest to satisfy margin loans was deleted. Sidney Kurth, one of the two lawyers representing McCrackens, drafted the agreement. It provided for a purchase price of $2,900,000, with a $812,000 cash down payment prior to closing. Melcher signed a promissory note for the balance of the purchase price, $2,088,000, and the bonds secured the note.

McCrackens were concerned about collateralizing the debt with bonds. Kurth's provision on the bonds was drafted to guarantee that the bonds would have a net worth equaling the amount due on the promissory note which evidenced the balance of the purchase price. The purchase-sale agreement defined net worth of the bonds to be the difference between their fair market value and any encumbrances held against them.

Although the agreement neither prohibited nor allowed margin encumbrances, evidence indicated that McCrackens assumed that the bonds would not be subject to sales by Melcher's broker because of margin calls. McCrackens agreed that they would look only to the bonds in the event that Melcher defaulted on the note.

3

McCrackens closed the deal with Melcher on December 20, 1979. Shortly after closing, Sidney Kurth went to Los Angeles to inspect the bonds Melcher had promised to place in escrow. However, Kurth failed to personally inspect the bonds, and deposition statements indicated that the bonds were not in place during Kurth's visit to Los Angeles. Depositions also indicated that had Kurth properly inspected the account Melcher had opened for the bonds, he would have discovered that they provided inadequate security because of the margin loans.

Sometime in the spring of 1980, Kurth discovered that the bonds were held on margin. Meanwhile, the bonds became subject to "margin calls", i.e., the bond broker was authorized to sell the bonds to satisfy Melcher's margin debt. By December 27, 1982, margin sales had liquidated the bonds. McCrackens received $421,391.04 for their security interest in the bonds.

David and Darrell McCracken, and Betty McCracken Bills, sued their attorney, Sidney Kurth. The other "McCrackens", Carol Ehresman and Judy South, sued the lawyer they had hired, Gregory Munro. Betty, David, and Darrell settled the suit with Kurth for $500,000. Carol and Judy settled with Munro for $144,000. McCrackens also have a suit pending against Melcher, and a suit pending against their accountant.

McCrackens allege that Hannah and Conrad should have informed them that the bonds provided inadequate collateral. The basis for this allegation is a statement from H. C. Jordan, Chairman of the Board of Sabre Farms Incorporated (Sabre).

Jordan's statement concerns an offer by Melcher to purchase property owned by Sabre prior to the land sale at issue in this case. According to Jordan, Sabre rejected the offer because Melcher proposed to secure the debt owed on the

4

Sabre land with bonds purchased on a margin. McCrackens contend that Smedsrud's alleged knowledge of the deal with Sabre creates a material question of fact in regard to a breach of the duty owed to McCrackens by Hannah and Conrad. Hannah and Conrad deny that Smedsrud knew why Sabre rejected the offer, and contend that even if Smedsrud did know why Sabre refused to sell to Melcher, this knowledge fails to create a material question of fact.

The District Court, facing the argument about the Sabre offer, stated:

> it is impossible to see how his not telling Plaintiffs what they and their counsel already knew and their accountant already had attempted to explain to them can make him liable for their injuries in this case.

We agree with the District Court.

A realtor has an affirmative duty to disclose all material facts to the seller. See Ellingson Agency v. Baltrusch (Mont. 1987), 742 P.2d 1009, 1013, 44 St.Rep. 1598, 1603. However, a realtor has no duty to disclose what the seller already knows. See Mallory v. Watt (Idaho 1979), 594 P.2d 629, 632-33. In this case, McCrackens and their attorneys already knew from Melcher's initial proposals that Melcher offered to secure the balance of the purchase price for property with bonds encumbered by margin loans. Jordan's statement as to Hannah and Conrad's knowledge of the existence of a similar offer made by Melcher to Sabre adds nothing material to the facts relevant to Hannah and Conrad's duty to disclose. Other than Jordan's statement, there is no evidence to indicate that Hannah and Conrad knew or should have known that the bonds were on margin.

Under Rule 56(c), M.R.Civ.P., summary judgment may be granted where the party opposing the motion fails to "raise

5

or to demonstrate the existence of the genuine issue as to any material fact or demonstrate that the legal issue should not be determined in favor of the movant." Palin v. Gerbert Logging (Mont. 1986), 716 P.2d 200, 202, 43 St.Rep 481, 483. McCrackens failed to raise the existence of the genuine issue as to any material fact in regard to Hannah and Conrad's breach of duty. Thus we affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

6