No. 91-622

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

FOX GRAIN AND CATTLE CO.,

        Plaintiff and Respondent,

  -vs-

FRANK F. MAXWELL,

        Defendant and Appellant.

APPEAL FROM:  District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Donald A. Ranstrom; Sias & Ranstrom, Chinook,
Montana

        For Respondent:

            James A. Hubble, John R. Christensen; Christensen
& Hubble, Stanford, Montana

Submitted on Briefs:  February 17, 1994

Decided:  November 21, 1994

Filed:

FILED

NOV 21 1994

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal and cross-appeal from a jury verdict in the Tenth Judicial District Court involving the termination of a farm lease. By special verdict the jury found that Frank F. Maxwell (Maxwell), did not materially breach the farm lease which he entered with Fox Grain & Cattle Co. (Fox Grain). The jury, however, found that Maxwell owed Fox Grain $38,779.60 for farming expenses; it then awarded Maxwell $23,013.42, plus 75 percent of the net Federal Crop Insurance Payment, for Fox Grain's failure to mitigate its damages, and found in favor of Maxwell on his counterclaims: 1) $16,721.15 for his share of the Conservation Reserve Program (CRP) proceeds; and 2) $16,500 for his loss of machinery claim. The jury also awarded Maxwell $95,000 for Fox Grain's breach of the implied covenant of good faith and fair dealing.

The District Court granted judgment notwithstanding the verdict eliminating the jury's award of $95,000 to Maxwell. Maxwell appeals the District Court's decision to grant judgment notwithstanding the verdict. Fox Grain cross-appeals: 1) the jury's findings on the breach issue; 2) the court's failure to grant it a judgment notwithstanding the verdict on the issue of Maxwell's other damages; and 3) the court's grant of summary judgment to Maxwell on the issue of the volunteer crop ownership. We affirm in part and remand.

The issues on appeal are:

2

1.   Did the District Court err by granting Fox Grain's motion for judgment notwithstanding the verdict on the jury's award of $95,000 for Fox Grain's violation of the covenant of good faith and fair dealing?

2.   Did the District Court err by denying Fox Grain's motion for judgment notwithstanding the verdict on the issue of Maxwell's other damages?

3.   Was there sufficient evidence in the record to support the jury's findings that Maxwell did not breach the lease?

4.   Did the District Court err by granting Maxwell summary judgment on Fox Grain's ownership claim of the volunteer winter wheat crop?

Maxwell entered a three-year farm lease with Fox Grain on February 17, 1989.

The lease agreement entered into between the parties gave Maxwell the right to farm Fox Grain's land during the crop seasons of 1989, 1990, and 1991. As part of that agreement, Maxwell agreed that he would occupy and cultivate the land in a "farmer-like manner" and would not permit damage to the land. In return, he was entitled to all of the 1989 crop and 75 percent of the 1990 and 1991 crops. Maxwell also agreed that all acres would be cultivated either by planting crop, or by summer fallow.

Fox Grain terminated the lease based on its claim that Maxwell breached the lease agreement by not cultivating the entire property and by failing to care for the property in a "farmer-like manner." However, after listening to three and one-half weeks of testimony,

3

including several experts who testified on behalf of Fox Grain, the jury concluded that Maxwell's failure to cultivate 100 acres of the property was not a material breach and apparently also found that he had performed in a "farmer-like manner" and had not allowed the property to be damaged.

In an effort to prove the value of its damages from Maxwell's alleged failure to properly care for the farm land, Fox Grain offered testimony from several neighboring landowners to establish what the land would have been capable of producing had it been properly cultivated and cared for.

For example, Larry Kalina testified that he farmed 1300 acres of land about four miles north of the Fox Grain property; that he was familiar with the Fox Grain property; and that his property and the Fox Grain property were quite similar. In the fall of 1990 (after Maxwell had been evicted from the Fox Grain property), Kalina planted a winter wheat crop on his land which produced a 1991 harvest of 30 to 35 bushels per acre.

Jess Knerr farms 2800 acres of land adjoining the Fox Grain property. He testified that his property is likewise similar to Fox Grain's land. In 1991, he produced 37 bushels of winter wheat per acre and 20 bushels of spring wheat per acre. He testified that 1991 was a better-than-average year due to increased moisture.

Kyle Grimsrud farms 1400 acres of property ten miles from the Fox Grain land. He testified that he was familiar with the Fox Grain property and considered it similar to the property that he farms. In 1991, he raised 43 bushels of winter wheat per acre and

4

29 bushels of spring wheat per acre. His production in 1991 exceeded that for either of the two previous years. It was his opinion that the Fox Grain property, if properly cared for, was capable of producing similar yields.

Alex Smith, who farms land south of Lewistown, was called as an expert witness to testify on behalf of Fox Grain. He testified that in 1991 it cost $12 an acre to harvest wheat. He estimated the price of wheat during 1991 was $2.80 a bushel.

Fox Grain served notice on Maxwell that the lease was being terminated on July 23, 1990. Maxwell actually left the property on August 23--one month later. Because he was wrongfully evicted from the property and was unable to plant a winter or spring crop for 1991, Maxwell was denied the opportunity to realize a profit from whatever crop he could have produced. The testimony was that had he remained on the property he could have seeded 1503.9 acres.

I

> Did the District Court err by granting Fox Grain's motion for judgment notwithstanding the verdict on the jury's award of $95,000 for Fox Grain's violation of the covenant of good faith and fair dealing?

It is well settled that this Court will review a district court's grant of a JNOV with the identical standard used to review a motion for directed verdict. Simchuk v. Angel Island Community Ass'n (1992), 253 Mont. 221, 225, 833 P.2d 158, 160.

> [A] directed verdict may be granted only where it appears as a matter of law that . . . [the non-moving party] could not recover upon any view of the evidence, including the legitimate inferences to be drawn from it.

Simchuk, 833 P.2d at 160. Further, a

5

district court must view the evidence in a light most favorable to the non-moving party when considering a motion for [JNOV]; the court must deny the motion if the non-moving party built a prima facie case or if a substantial conflict in the evidence exists. Only if the evidence presents no room for an honest difference of opinion should a JNOV be granted.

Simchuk, 833 P.2d at 162 (citations omitted). Accordingly, this Court must examine whether Maxwell could recover upon any view of the evidence.

The jury found that Fox Grain breached the implied covenant of good faith and fair dealing. It was established by Maxwell and his witnesses that Fox Grain only complained once about Maxwell's farming practices before Fox Grain evicted Maxwell from the land. Maxwell argues that if Fox Grain had left him alone, he would have planted and harvested wheat and made a profit just like the neighbors in the area.

Had Maxwell produced 36 bushels of winter wheat per acre (which was well within the range of his neighbors' production); and had he provided 25 percent of that crop to Fox Grain pursuant to the parties' lease agreement; and after deducting $12 per acre as the reasonable cost of harvesting the crop, he would still have realized a profit of $95,648.04.

Fox Grain argues that while it offered proof of what its property was capable of producing had it been cared for in a farmer-like manner, the property was not capable of producing that much wheat when Fox Grain took it back from Maxwell due to the terrible condition in which Maxwell left it. However, according to our conclusion under Issue IV, Fox Grain's evidence to that effect

6

apparently raised, at most, a question of fact which the jury resolved in favor of Maxwell. Had the jury found that the property was as unproductive as Fox Grain and its witnesses alleged, the jury would necessarily have had to find that Maxwell had permitted waste or damage to the property and, thereby, breached the lease agreement. The jury's finding was to the contrary.

Fox Grain argues that the crop it produced in 1991 was unproductive, due to the condition of its land. However, Maxwell's evidence was to the effect that he would have employed different farming techniques, which he felt would have been more productive than those employed by Fox Grain. The jury had a right to, and apparently did, believe Maxwell.

The jury's verdict was further supported by the fact that in 1989, on the same piece of land, Maxwell realized income of $79,885.84 from a winter wheat crop which he had not even planted, but which grew from seeds knocked from their stalks in 1988 as a result of hail damage. The jury had a right to find that if Maxwell could realize net income of over $70,000 from a volunteer winter wheat crop in 1989, he could earn substantially more than that on the same land by employing good farming techniques in the fall of 1990 and the growing season of 1991.

While there was substantial evidence produced by Fox Grain from which the jury could have found that Maxwell's farming techniques would not have been profitable during the remainder of his lease term with Fox Grain, it was not the responsibility of the District Court, and is certainly not the appropriate function of

7

this Court, to ignore a jury verdict which is supported by evidence, or inferences from the evidence, simply because the District Court found plaintiff's evidence more persuasive. As we pointed out in Simchuk:

> [A] directed verdict may be granted only where it appears as a matter of law that . . . [the nonmoving party] could not recover upon any view of the evidence, including the legitimate inferences to be drawn from it.

Simchuk, 833 P.2d at 160 (quoting Wilkerson v. School Dist. No. 15 (1985), 216 Mont. 203, 211, 700 P.2d 617, 622).

In this case, the jury found that Fox Grain breached the covenant of good faith and fair dealing which was implied from its contract with Maxwell. When a breach of that covenant occurs, contract damages are appropriate. Story v. City of Bozeman (1990), 242 Mont. 436, 450, 791 P.2d 767, 775. The purpose of contract damages is to make the nonbreaching party whole, or put the nonbreaching party in a position as if the contract had been performed. Stensvad v. Miners and Merchants Bank (1982), 196 Mont. 193, 206, 640 P.2d 1303, 1310.

Maxwell's contract damages for breach of the covenant of good faith and fair dealing were based on the profits he lost from being unable to farm Fox Grain's land pursuant to his lease agreement. While damages for lost profits may not be speculative, it is only required that they be proven with "the best evidence under the circumstances [which] will support a reasonably close estimate of the loss." Stensvad, 640 P.2d at 1310.

The best evidence of the profits which Maxwell could have produced, had he been allowed to continue farming Fox Grain's land

8

pursuant to their lease agreement, was evidence of what farmers on similar land in the area were able to produce.

In this case, Fox Grain introduced evidence of what neighboring farmers were able to produce in order to establish its own damages based on its allegation that Maxwell had damaged its land. The jury, however, found that Maxwell had not damaged Fox Grain's land when it found that Maxwell had not breached the lease agreement. It is, therefore, only logical to conclude that had Maxwell been able to perform under the lease agreement he would have been able to produce crops similar to those produced on adjoining and neighboring lands. We conclude that the jury's verdict on this issue was supported by substantial credible evidence, that the District Court erred in granting a JNOV on this issue, and reinstate the jury verdict awarding Frank F. Maxwell $95,000.

## II

Did the District Court err by denying Fox Grain's motion for judgment notwithstanding the verdict on the issue of Maxwell's other damages?

The jury awarded Maxwell: 1) $23,013.42, plus 75 percent of the net federal crop insurance payment, for Fox Grain's failure to mitigate its damages; and 2) $16,500 on his loss of machinery claim. According to Fox Grain, there was absolutely no evidence in the record to support these two jury awards. Fox Grain contends that the District Court improperly refused to grant a JNOV as to these awards.

First, Fox Grain challenges the award of 75 percent of the

9

federal crop insurance payment. Fox Grain argues that the award was unnecessary. Since the jury concluded that the lease was in effect during 1991, pursuant to the lease terms Maxwell was entitled to 75 percent of all government payments, including crop insurance.

We conclude that Maxwell was entitled to 75 percent of all government payments, including crop insurance. We remand this issue to the District Court to determine the types of government payments received by Fox Grain during 1991 and the amounts due to Maxwell under each program.

Fox Grain further argues that the award of $23,013.42, was not supported by any evidence and thus, was speculative. Accordingly, the District Court should have granted a JNOV as to that award.

A review of the record, however, negates Fox Grain's argument. Technically the award of $23,013.42 was not an award but, rather, that amount represented an amount which Maxwell was not liable since Fox Grain failed to mitigate its damages. The jury determined that the lease was in effect and, pursuant to the lease, Maxwell was liable for 75 percent of the farming expenses, or $38,779.60. The jury then determined that Fox Grain failed to mitigate those farming expenses and concluded that if Fox Grain properly mitigated its damages, it would have saved Maxwell $23,013.42.

The record reveals that evidence was elicited to prove that Fox Grain refused to sell stored grain, which resulted in $1,000 of extra storage costs. Further, Fox Grain refused to enter an

10

agreement with Maxwell so that the Agriculture Stabilization and Conservation Service would release advance deficiency payments of $23,452 to Fox Grain. This evidence supports the jury's finding that Fox Grain failed to mitigate its damages in the amount of $23,013.42. On that basis, we conclude that the District Court properly denied Fox Grain's motion for a JNOV as to the $23,013.42.

Additionally, Fox Grain contends that the special verdict form was misleading. According to Fox Grain, the wording of question 2)b), is nonsensical, confusing, and the jury did not know what the question was asking. The special verdict provided, in pertinent part:

2) Do you find against [Fox Grain] and in favor of [Maxwell], that no material breach of the lease occurred?

Answer:    Yes__X__    No_____

If your answer is yes, resulting in recognition of the continuing validity of the lease, then:

a) What amount of farming expenses incurred since July 23, 1990, do you find [Maxwell] responsible for the payment of?

$ 38,779.60

b) Taking into consideration mitigation of damages, what amount of damages, if any, do you award to [Maxwell] and against [Fox Grain]?

$ 23,013.42 + 75% of net Fed Crop Ins pmt

While question 2)b) is not a model question on the mitigation issue, we conclude that the special verdict form comports with the standards of Rule 49(a), M.R.Civ.P. In Story v. City of Bozeman (1993), 259 Mont. 207, 229, 856 P.2d 202, 215-16, we examined the three-part standard to determine the adequacy of a special verdict

11

form:

1) whether, when read as a whole and in conjunction with the general charge, the interrogatories adequately presented the contested issues to the jury;

2) whether the submission of the issues to the jury was fair; and

3) whether the ultimate questions of fact were clearly submitted to the jury.

In the present case, when question 2)b) is read in context with the remaining portions of the special verdict form, the issue of mitigation was properly presented to the jury. The special verdict fairly and accurately submitted the issues, and specifically the mitigation issue, to the jury. Further, the ultimate question of fact of whether Fox Grain mitigated its damages was logically and clearly presented to the jury. We hold that the special verdict form complied with Rule 49(a), M.R.Civ.P.

Finally, Fox Grain maintains that the District Court should have overturned the jury award of $16,500 for loss of machinery. Fox Grain contends that Maxwell's father, Tom, purchased the tractor in his own name. Since Tom was not a party to the lease, the loss of the tractor was Tom's, and not Maxwell's. Fox Grain argues that the District Court improperly allowed Maxwell to recover the loss of that tractor. The record, however, dilutes Fox Grain's argument.

Even though Tom purchased the tractor in his name, Maxwell's property--worth $14,300--was used as a down payment, and Maxwell was responsible for the payments. Tom only assisted Maxwell in obtaining financing for the tractor. Further, two other items of

12

machinery were lost, a posthole digger and rotary cutter valued between $2,500 and $2,750. After an extensive review of the record, we conclude that the District Court properly denied Fox Grain's motion for a JNOV as to the machinery damages. We hold that the record contains sufficient proof to justify the jury's conclusion that Fox Grain failed to mitigate its damages--$23,013.42--and owed Maxwell $16,500 for Maxwell's loss of machinery. The District Court is affirmed on Issue II.

### III

Was there sufficient evidence in the record to support the jury's findings that Maxwell did not breach the lease?

The jury concluded that Maxwell had not breached the lease and the lease was in effect for 1991. Fox Grain contends that the jury's conclusion on the breach issue is unsupported by the evidence. Moreover, Fox Grain argues that the District Court erred by granting Maxwell's motion in limine relating to negotiations or discussions which predated the execution of the lease agreement.

We will not disturb a district court's evidentiary rulings absent an abuse of discretion. Haines Pipeline Construction, Inc. v. Montana Power Co. (1991), 251 Mont. 422, 427, 830 P.2d 1230, 1234. In this case, the District Court's order in limine excluded parol evidence of the lease agreement. Fox Grain contends that parol evidence should have been admitted to explain ambiguities in the lease. See Ellingson Agency, Inc. v. Baltrusch (1987), 228 Mont. 360, 366, 742 P.2d 1009, 1013. Fox Grain contends that the following provisions are ambiguous:

13

1) Maxwell agreed to "occupy, till and in all respects cultivate the premises above mentioned during the term aforesaid, in a farmer-like manner, and according to the usual course of farming practiced in the neighborhood;" and

2) Maxwell and Fox Grain "agreed that not less than all acres shall be cultivated each year of this lease, either by being in crop or summerfallow, except that Maxwell is allowed to stubble in approximately 1,000 acres of summerfallow and will leave 1,000 acres of summerfallow at the end of the lease."

Fox Grain argues that the terms "farmer-like manner," "usual course of farming practiced in the neighborhood," and "not less than all acres shall be cultivated each year of this lease" were ambiguous and required parol evidence to explain their meaning. Further, the term "Maxwell is allowed to stubble in approximately 1,000 acres of summerfallow" is ambiguous, since any farmer knows that a person cannot "stubble in" summerfallow.

When ambiguous terms exist in a contract, parol evidence is admissible to explain the ambiguous terms. Ellingson Agency, 742 P.2d at 1013. In Ellingson Agency, we examined whether the term "conveyance" under a real estate broker's exclusive listing agreement included a transfer of title in lieu of foreclosure. We concluded that summary judgment was improper because genuine issues of fact existed since the term "conveyance" did not have a fixed meaning. Ellingson Agency, 742 P.2d at 1013. We held that parol evidence was necessary to interpret the parties' intention of including that term in the agreement. Ellingson Agency, 742 P.2d at 1013.

Fox Grain contends that the District Court should have allowed it to testify as to the meaning of the terms of the lease.

14

According to Fox Grain, it was unable to explain to the jury that the lease required Maxwell to spray for weeds and summerfallow the property. The lease, however, did not provide that Maxwell was required to spray or summerfallow the property. The lease did provide "[t]hat Fox [Grain] is to be consulted by Maxwell as to the farming decisions, however, the final decision of Maxwell shall be binding upon Fox [Grain]." Even though the court refused to allow Fox Grain to testify about the meaning of the terms, the court did allow neighboring farmers' testimony on the issue of farming practices. We conclude that the court did not abuse its discretion when it limited Fox Grain's testimony as to what it felt the lease required of Maxwell.

Fox Grain also argues that the jury's finding that Maxwell did not breach the lease was not supported by substantial evidence. Fox Grain extensively argues the facts of this case and concludes that Maxwell breached the lease. When conflicting evidence exists, the jury must judge the credibility and weight of the evidence and we will not retry the case nor will we reweigh the evidence on appeal. Whisher v. Higgs (1993), 257 Mont. 132, 146, 849 P.2d 152, 160. After an extensive review of the record, we conclude that the jury's finding that Maxwell did not breach the lease was supported by substantial evidence. We affirm the jury verdict on Issue III.

IV

Did the District Court err by granting Maxwell summary judgment on Fox Grain's ownership claim of the volunteer winter wheat crop?

Our standard of review on a grant of summary judgment is

15

identical to that of the trial court. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. First, we examine the record to determine whether genuine issues of fact exist. Minnie, 849 P.2d at 214. If no genuine issues of fact exist, then we must determine whether the moving party is entitled to judgment as a matter of law. Minnie, 849 P.2d at 214.

The lease provisions stated that Maxwell would lease the premises during the 1989, 1990, and 1991 crop seasons. Maxwell was to deliver to Fox Grain one-fourth of all crops produced on the land, except that Maxwell was to receive the entire 1989 crop and Fox Grain was not to share in that crop.

Fox Grain concedes that the volunteer crop was harvested in 1989, but contends that an issue of fact exists as to which year the crop began growing. Fox Grain contends that the crop was actually planted in 1987 for harvest in 1988. However, due to the hail storm in 1988, the volunteer crop sprouted in 1989.

We conclude that no genuine issue of fact exists and the agreement is clear on its face that since the volunteer crop was harvested in 1989, Maxwell had a right to receive the entire crop. At the beginning of the lease, the parties were aware of the existence of the volunteer crop, but chose not to address the ownership of that crop in their agreement. Moreover, when Maxwell harvested the volunteer crop in 1989, Fox Grain did not claim that it owned the crop. Rather, Fox Grain waited until 1990--when it sent Maxwell the lease cancellation notice--to claim an ownership interest in that crop. We hold that the District Court properly

16

granted summary judgment to Maxwell on the volunteer crop ownership issue.

On Issue IV, we affirm the District Court's decision, except we remand for a determination of the government payments due to Maxwell under the lease terms.

                                    _____
                                              Justice

We concur:

_____
        Chief Justice

_____

_____

_____

_____

_____
              Justices