No. 81-467

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

_____

BONITA NELSON,

        Plaintiff and Respondent,

   -vs-

HARRY HARTMAN, an individual and
DONLAN RANCH, a business doing business
in Gallatin County,

        Defendant and Appellant.

_____

Appeal from:  District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin, The Honorable
               Robert M. Holter, Judge presiding.

Counsel of Record:

    For Appellant:

        Lyman H. Bennett, III, Bozeman, Montana

    For Respondent:

        Kirwan & Barrett, Bozeman, Montana

_____

Submitted on Briefs:  May 6, 1982

Decided:  AUG 5 1982

Filed: AUG 5 1982

_____
Thomas J. Kearney
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This is an appeal of the July 1, 1981, order of the Eighteenth Judicial District Court of Montana granting respondent's motion for a new trial. Because sufficiency of evidence is a critical question on appeal, we hereafter detail the trial record.

At 11:00 A.M., October 1, 1978, a pickup truck driven by appellant, Harry Hartman, was in a collision with the vehicle in which respondent, Bonita Nelson, was riding. The accident occurred on United States Highway 191, approximately seven miles south of Bozeman, Montana.

Mr. Hartman, as an employee of the Donlan Ranch, was helping move Donlan cattle one and one-half miles south down Highway 191. Mr. Hartman drove a pilot car leading the cattle. Alan Atchison was a passenger in Hartman's truck. Other ranch employees were driving a second pilot car behind the cattle.

Mr. Hartman testified that he drove down the center line of the highway with flashers activated in front, on top and behind the truck. To further attract the attention of other drivers, he manually flashed the headlights at oncoming traffic.

The Donlan Ranch road was to Mr. Hartman's left. On approaching that road, Hartman stated he checked the rearview mirror. He saw the cattle and two vehicles directly behind him, proceeding at the same slow rate of speed as he. The second pilot car was approximately a quarter mile back.

Hartman testified he signaled and proceeded to turn left into the ranch road, with his emergency flashers operating. The Nelson vehicle was overtaking and passing Hartman's truck at that same time. A collision ensued.

Alan Atchison, the passenger in Hartman's truck, testified for defendant. He stated that while walking behind the truck, with the cattle, he had observed the truck's rear lights flashing. Mr. Atchison was riding inside the cab when the accident occurred. He said he checked the traffic prior to Hartman's left turn. He testified to seeing the cattle and two cars immediately behind the truck, moving at approximately 15 to 20 miles per hour. He did not see the Nelson vehicle.

Mrs. Nelson testified that she, her husband and four grandchildren were enroute to Idaho when the accident occurred. She checked behind their stationwagon as Mr. Nelson started to pass. She saw no vehicles approaching from the rear, then turned forward and saw the pickup immediately in front of them. She did not recall seeing any cattle.

James Wayment, a north-bound motorist, testified that he saw a left-turn signal on Nelson's vehicle, but saw no lights whatsoever on the truck driven by Hartman. He also observed no cattle on the road.

Up until the weekend prior to trial, Boyd Nelson was also a plaintiff in this suit. His claim was settled for $12,650. A motion in limine regarding contributory negligence of Boyd Nelson, driver of the car in which respondent was riding, was granted the first day of trial. When Nelson took the stand, he testified only regarding his wife's injuries and how they affected the work she did for the family business. No other witnesses were called on the liability issue.

On the first day of trial, counsel for plaintiff was advised by the court that testimony regarding Mr. Hartman's bad driving record would not be admitted unless a foundation was first laid. The foundation had to establish a clear

-3-

connection between Mr. Hartman's operating the truck as an unlicensed, habitual offender driver and Mrs. Nelson's injuries. No such foundation was laid and the evidence was not admitted.

The jury returned a verdict in favor of defendants, Harry Hartman and Donlan Ranch. Judgment was entered April 30, 1981. A motion for new trial followed. The motion was granted for the following reasons:

(1) It was error to exclude evidence of Mr. Hartman's past driving record. Such evidence was relevant to the issue of Mr. Hartman's capabilities as a driver as well as to the issue of punitive damages;

(2) The jury's verdict was contrary to the evidence presented at trial; and

(3) Discussion by both counsel of the exercise of a preemptory challenge as to one juror was improper and affected the jury in its deliberations.

Defendant contends that the District Court abused its discretion by granting the plaintiff's motion for a new trial. We find that the District Court did abuse its discretion on each of the three grounds and reverse the order granting respondent a new trial.

We do not agree with the trial court that it was error to exclude evidence of Mr. Hartman's past driving record. The evidence was not unconditionally excluded. Rather, counsel for respondent was told such evidence would be admitted if a proper foundation linking appellant's driving record with respondent's injuries was first laid. No foundation was laid. The evidence was not allowed.

Evidence that a driver has no license and has been designated a habitual offender for driving purposes is

-4-

highly prejudicial. Such evidence could only be relevant to an issue of competency and could not be used to prove any specific act of negligence here at issue. The court was correct in originally demanding that a proper foundation be laid prior to admitting the evidence. Further, since the jury failed to find appellant liable, there was no error in failing to admit appellant's driving record for punitive damages purposes. There can be no punitive damages without actual liability entitling Nelson to actual damages. Galiger v. Hansen (1957), 133 Mont. 34, 319 P.2d 1051; Smith v. Krutar (1969), 153 Mont. 325, 457 P.2d 459.

The District Court's second ground for granting respondent a new trial was that the jury verdict was contrary to the evidence. A trial court's denial of a motion for new trial is granted greater deference than a motion which has the effect of nulliying a jury verdict. This Court will not hesitate to reinstate the verdict which is supported by substantial evidence. Beebe v. Johnson (1974), 165 Mont. 96, 526 P.2d 128, citing Campeau v. Lewis (1965), 144 Mont. 543, 398 P.2d 960.

The evidence here presented at trial was in conflict. When testimony at trial includes different accounts of an event, the trial court cannot overturn a jury verdict or grant a new trial solely because it choses to believe testimony different than that believed by the jury. Yerkich v. Opsta (1978), 176 Mont. 272, 577 P.2d 857. To honor this action would create a bench supremacy and sap the vitality of jury verdicts. There is substantial credible evidence to support the jury's verdict and the verdict should be reinstated unless the granting of a new trial can be premised on the final ground stated.

The trial court's third reason for granting a new trial was the effect on the jury of the discussion concerning a prospective juror by both counsel in their closing arguments. In its order, the trial court said:

> "It is impossible at this juncture to assess the impact of this type of argument upon a jury. It impacted this judge because of being unprofessional conduct. Because I am unable to assess the total impact of this conduct upon the jury but am satisfied that the totality of the circumstance was such that it did affect the jury in its deliberations, this alone is sufficient grounds for new trial."

In his closing argument, counsel for defendant stated:

> "Now, in closing, ladies and gentlemen of the jury, you recall one of the tentative members of the jury Monday, and you notice he's not here, who said, 'I'm going to award the plaintiff what I feel is fair and reasonable, as long as there's no snow in it.'"

In response, counsel for plaintiff stated:

> "I'm wondering about this snow situation with this juror. I remember him. His name was Dan Sanders, and he sat right down there, and Bill Bennett [counsel for defendant] disqualified him. I don't know why he disqualified him, but I believe Bill Bennett's second or third disqualification was given, and it was Dan Sanders."

To this defense counsel replied:

> "Mr. Bennett: 'May it please the Court, could we correct the record on that particular matter? It was the plaintiff who disqualified Mr. Sanders.'"

At that point, the trial judge called a recess and counsel were admonished in chambers. Upon return to the courtroom, the trial judge discussed at length the comments about the prospective juror with the jury and advised the jury to ingore them.

The test used by this Court to determine when arguments of counsel may be the basis for granting a new trial is found in Vogel v. Fetter Livestock Co. (1964), 144 Mont. 127, 394 P.2d 766. Improper argument requires reversal only when

prejudice has resulted which prevents a fair trial. The trial court did not make a specific finding of prejudice. In fact, the trial court first determined that the jury admonishment was sufficient guarantee of a fair trial. Counsel did not object. We find no basis for a new trial.

The order granting respondent a new trial is reversed. The original verdict in favor of defendant is reinstated and judgment shall be entered accordingly.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices