No. 97-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 47

JESSE DURDEN and GRACE ANN DURDEN,
individually and as Guardians for APRIL DURDEN,
a Minor.
Plaintiffs, Respondents and Cross-Appellants.
vs.

HYDRO FLAME CORPORATION, a Utah
Corporation,
Defendant,

and.

CHIEF INDUSTRIES, INC., d/b/a KING
OF THE ROAD, a Kansas Corporation,
Defendant, Appellant, and Cross-Respondent.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable William Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:
Gig A. Tollefsen, Berg, Lilly, Andriolo & Tollefsen, Bozeman, Montana

For Respondents:
Monte D. Beck, Beck Law Offices, Bozeman, Montana; Joe
Bottomly,                    Kalispell, Montana

Submitted on Briefs: January 8, 1998
Decided: March 10, 1998
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 This is an appeal by Chief Industries, Inc., d/b/a King of the Road (Chief) from the December 5, 1996 order of the Sixth Judicial District Court, Park County, granting the motion of Plaintiffs Jesse and Grace Ann Durden, individually and as guardians for their minor daughter, April Durden (Durdens) for judgment notwithstanding the verdict and for new trial. We reverse in part, affirm in part and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2 Because we are remanding this case for a new trial on the issues of causation and, if causation is proven, damages, we will limit our discussion of the background of this case to the extent necessary to address the dispositive legal issues.

¶3 Durdens filed a product liability action against Chief, a trailer manufacturer and against Hydro Flame Corporation, a component manufacturer of the trailer furnace. Durdens alleged that personal injuries to Mrs. Durden and to April were caused by defects in the heating system allowing carbon monoxide, or CO, to enter the trailer. Durdens settled with Hydro Flame prior to trial. Liability was conceded by Chief. Durdens' action was tried against Chief on September 16 through 26, 1996. The jury returned a verdict finding no causation and, thus, did not reach the issue of damages. Thereafter, Durdens moved for judgment as a matter of law based on insufficient evidence to support the verdict and for a new trial based on misconduct of defense counsel. The District Court granted both motions on December 5, 1996, and, by a subsequent opinion and order issued December 23, 1996, sanctioned Chief by requiring it to pay Durdens' reasonable attorneys' fees, costs and expenses incurred during the first trial and in obtaining a new trial.

¶4 Chief appealed from the trial court's December 5 and December 23 orders. Durdens cross-appealed from the court's denial of their pretrial motion to strike the testimony of Chief's medical expert, Dr. Donna Seger, on the grounds that Chief had failed to provide an adequate expert-witness disclosure pursuant to Rule 26(b), M.R.Civ.P.

## ISSUES

¶5 At the outset, we note that, while Chief's notice of appeal encompasses the

District Court's order of December 23, 1996, granting sanctions for defense counsel's misconduct, that particular matter is neither briefed nor argued on appeal by Chief. Accordingly, we deem Chief's appeal of the trial court's imposition of sanctions waived, and we will not address this issue further. Rule 23, M.R.App.P.; In re Marriage of Lee (1997), 282 Mont. 410, 421, 938 P.2d 650, 657; DeVoe v. State (1997), 281 Mont. 356, 370, 935 P.2d 256, 265; Rieman v. Anderson (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1126-27; Whalen v. Taylor (1996), 278 Mont. 293, 302, 925 P.2d 462, 467.

¶6 We will, however, address the following issues in this appeal:

¶7 I. Did the District Court err in granting Durdens' motion for judgment as a matter of law?

¶8 II. Did the District Court err in granting Durdens' motion for new trial?

¶9 By way of their cross-appeal, Durdens raise the issue of whether the District Court erred in allowing Chief's medical expert, Dr. Donna Seger, to testify. We will also address this issue in turn.

## DISCUSSION

### I.

¶10 Did the District Court err in granting Durdens' motion for judgment as a matter of law?

### A.

¶11 Appealability of the District Court's order granting judgment as a matter of law

¶12 Before deciding the merits of this issue we must first address Durdens' argument that an order granting judgment as a matter of law is not an appealable order. As Durdens point out, Rule 1, M.R.App.P., enumerates the orders from which appeals may be taken, and this rule does not include an order granting judgment as a matter of law. Durdens also cite to our decisions in Weston v. Kuntz (1980), 187 Mont. 453, 610 P.2d 172, and Bostwick v. Department of Highways (1980), 188 Mont. 313, 613 P.2d 997, wherein we held that a court order determining liability only, and reserving the issue of damages is interlocutory, and

thus, not an appealable order. Weston, 187 Mont. at 454, 610 P.2d at 172; Bostwick, 188
Mont. at 325, 613 P.2d at 998.

¶13  In response, Chief points out that for several decades this Court has accepted appeals
of district court orders granting or denying judgments as a matter of law.  In support of this
argument, Chief cites Fox Grain and Cattle Co. v. Maxwell (1994), 267 Mont. 528, 885 P.2d
432; Kestell v. Heritage Health Care Corp. (1993), 259 Mont. 518, 858 P.2d 3; Greytak v.
RegO Co. (1993), 257 Mont. 147, 848 P.2d 483; Simchuck v. Angel Island Community Ass'n
(1992), 253 Mont. 221, 833 P.2d 158; Larson v. K-Mart Corp. (1990), 241 Mont 428, 787
P.2d 361; and Wilkerson v. School Dist. No. 15, Glacier Cty. (1985), 216 Mont. 203, 700
P.2d 617.  These cases, however, are distinguishable.

¶14  In Fox Grain, the judgment as a matter of law eliminated a portion of the damages
awarded to the defendant; we reversed and ordered the verdict reinstated.  Fox Grain, 267
Mont. at 535, 885 P.2d at 437. In Kestell, the court denied the defendant's motion for
judgment as a matter of law and we affirmed. Kestell, 259 Mont. at 528, 858 P.2d at 9.  In
Greytak, the court denied the plaintiff's motion for judgment as a matter of law, but ordered
a new trial because of claimed instructional error.  We reversed the order granting new trial.
Greytak, 257 Mont. at 155-56, 848 P.2d at 489.  Simchuck involved a case where the court
granted judgment as a matter of law in favor of the defendant and denied the plaintiff's
motion for judgment as a matter of law on the issue of negligence.  We reversed the court's
granting judgment as a matter of law, ordering the plaintiff's verdict reinstated, and affirmed
the court's denial of the judgment as a matter of law on negligence.  Simchuck, 253 Mont.
at 227-28, 833 P.2d at 162.  In Larson, we affirmed the court's denial of the plaintiff's motion
for judgment as a matter of law.  Larson, 241 Mont. at 433, 787 P.2d at 364.  And, finally,
in Wilkerson, we reversed the judgment as a matter of law for the defendant and ordered the
plaintiff's verdict reinstated.  Wilkerson, 216 Mont. at 211, 700 P.2d at 623.

¶15  Importantly, in each of the foregoing cases the order granting or denying judgment

as a matter of law was in the context of a final, and thus appealable, disposition of the case. Accordingly, the cases cited by Chief do not support its argument here. The mere fact that we have accepted other appeals of orders granting and denying motions for judgment as a matter of law does not resolve the issue raised by Durdens.

¶16 Our recent decision in Ryan v. City of Bozeman (1996), 279 Mont. 507, 928 P.2d 228, is very nearly on point, however. In that case, the trial court granted plaintiff's motion for judgment as a matter of law on the issue of liability and ordered a new trial on damages. The defendant appealed the order granting new trial and filed a petition for writ of supervisory control with regard to the grant of judgment as a matter of law since, as we pointed out, "the grant of a [judgment as a matter of law] is not subject to appeal under Rule 1, M.R.App.P." Ryan, 279 Mont. at 509, 928 P.2d at 229. In its petition for the writ, defendant, without opposition from the plaintiff, asked that the two issues be combined. Given the posture of the case and in the interests of judicial economy, we granted the writ and ordered that both the granting of the judgment as a matter of law and the granting of a new trial be combined for briefing. Ryan, 279 Mont. at 509, 928 P.2d at 229.

¶17 In this case Chief did not file a petition for writ of supervisory control requesting review of the order granting judgment as a matter of law in conjunction with its appeal of the order granting new trial. Accordingly, on that basis, we might well dismiss the appeal of the judgment as a matter of law issue. Notwithstanding, we conclude that because this case comes to us from the trial court in a posture procedurally identical to that of the case in Ryan, our same concerns regarding judicial economy and the near certainty that we will likely have to address this issue in another appeal following the trial on damages justifies our addressing the merits of this issue at this time.

¶18 Our authority to proceed in this manner derives from Rule 3, M.R.App.P., which allows this Court, on its own motion, to suspend the requirements of the rules of appellate procedure in the interest of expediting a decision upon any matter before us or for other good cause shown.

¶19 Finally, on this latter point and given our decision in Ryan and, now, in this

case, it may be proper that we simply consider amending Rule 1, M.R.App.P., to specifically allow for the appeal of an order granting a motion for judgment as a matter of law when that is taken in conjunction with an order also granting a new trial on damages. In this limited class of cases, since the order granting a new trial is already appealable under Rule 1(b)(2), M.R.App.P., considering the two appeals together may save the necessity either for a second appeal or a second trial. In either event, the courts and the parties all save valuable time, money and resources.

B.

¶20 Merits of the District Court's order granting judgment as a matter of law

¶21 The standard to be used by a district court in deciding a motion for judgment as a matter of law, is well settled; it is the same standard used in resolving motions for directed verdict. As we stated in Kestell:

> In considering a motion for a directed verdict or for [judgment as a matter of law], the district court must view the evidence in a light most favorable to the non-moving party. A motion for directed verdict must be denied if there is any evidence that warrants submission to the jury [Wilkerson, 216 Mont. at 211, 700 P.2d at 622]. A motion for [judgment as a matter of law] must be denied if it appears that the non-moving party can recover upon any view of the evidence, including legitimate inferences to be drawn from it [Larson, 241 Mont. at 433, 787 P.2d at 364].

Kestell, 259 Mont. at 523, 858 P.2d at 6. Moreover, we have stated that motions for directed verdict and for judgment as a matter of law are properly granted only when there is a "complete absence" of any evidence to warrant submission to the jury, such evidence and all inferences being considered in the light most favorable to the party opposing the motion. Jacques v. Montana Nat. Guard (1982), 199 Mont. 493, 504, 649 P.2d 1319, 1325 (citations omitted).

¶22 This Court's standard of review of appeals from district court orders granting or denying motions for directed verdict and judgment as a matter of law is identical to that stated above. Ryan, 279 Mont. at 510, 928 P.2d at 229-30. Furthermore, in Ryan we underscored that:

> The courts will exercise the greatest self-restraint in interfering with the constitutionally mandated processes of jury decision. Unless there is a complete absence of any credible evidence in support of the verdict, a

[judgment as a matter of law] motion is not properly granted.  Barmeyer v. Montana Power Company (1983), 202 Mont 185, 191, 657 P.2d 594, 597 (overruled on other grounds).

Ryan, 279 Mont. at 510, 928 P.2d at 230.

¶23  In the case at bar, the District Court ruled that Chief did not present "sufficient evidence to raise a substantial conflict in the evidence as to whether or not the Plaintiffs suffered some degree of harm from the malfunctioning furnace."  The court believed this to be the case even considering the evidence and inferences in the light most favorable to Chief.  However, as pointed out above, whether a party raises a substantial conflict in the evidence is not the correct standard for considering a motion for judgment as a matter of law.  Rather, the trial court properly grants a motion for judgment as a matter of law only where there is a complete absence of any credible evidence in support of the verdict.  If there is any evidence in support of the verdict and if the party opposing the motion can recover on any view of the evidence and legitimate inferences, then the court must exercise self-restraint, credit the constitutionally mandated process of jury decision, and deny the motion.

¶24  We conclude that the trial court erred in not following this standard when it granted Durdens' motion for judgment as a matter of law on the issue of causation.  There was credible evidence presented by Chief by which a jury could find or infer that Durdens' injuries were not caused by the malfunctioning furnace. We decline to exhaustively review this evidence inasmuch as this case is being remanded for a new trial on causation and damages.  However, in our review of the record, we note that Chief did present evidence which, when viewed in a light most favorable to it, would support the jury's verdict.

¶25  For example, an assistant fire chief and Montana Power Company gas foreman both testified that they were qualified to test for carbon monoxide, that they correctly tested for that substance at the time when Durdens alleged they were exposed to CO, and only normal levels were found.  Evidence indicated that only Mrs. Durden and April were allegedly afflicted with CO poisoning; some other family members living in the same trailer were not. Mrs. Durden's physician's office notes and her medical records indicated that certain of her symptoms which she attributed to the carbon monoxide exposure predated the purchase

of the trailer or were not communicated to the doctor by her on visits during the time that she claimed to be suffering severe CO symptoms. Moreover, there was evidence that during this time period, the physician diagnosed ailments unrelated to carbon monoxide exposure. There was evidence that the cracks in the furnace heat exchanger developed over time and would not have been present within days of the purchase of the trailer when Mrs. Durden claimed that her symptoms began.  Evidence was presented that another physician tested Mrs. Durden's and April's blood, did not find abnormal levels of CO, was not advised by them of various problems that Mrs. Durden and April attributed to carbon monoxide exposure, and did not diagnose CO poisoning.  Finally, and without going into detail, there was other medical testimony from which the jury could have inferred that Mrs. Durden's and April's medical problems were not caused by CO leaking from the faulty trailer furnace.

¶26  While Durdens presented at trial countervailing witnesses, testimony and evidence of their own and offer on appeal various explanations, interpretations and refutations of the evidence presented by Chief, we cannot conclude on the record of this case that there was a complete absence of any credible evidence in support of the jury's verdict; that there was not any evidence in support of the verdict; or that Chief could not recover on any view of the evidence and legitimate inferences.  Whether the conflict in the evidence was substantial or insubstantial is not the proper standard for assessing the merits of a motion for judgment as a matter of law.

¶27  Weighing and resolving conflicts in the evidence, judging the credibility of the witnesses and finding the facts is uniquely within the province of the jury. Trial courts should invade this domain reluctantly and then only when, in the words of Rule 50(a), M.R.Civ.P., "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party" on the matter at issue.

¶28  Given the District Court's analysis of and decision on Durdens' new trial motion, discussed in the next section of this opinion, it is, perhaps, understandable why the court granted their motion for judgment as a matter of law.  In fact, Durdens argue on appeal that

judgment as a matter of law is an appropriate sanction for defense counsel's misconduct. However, we do not read the trial court's order as granting judgment as a matter of law as a punishment, but rather being based upon the court's weighing of the relative evidence presented by each side and its finding that Chief's case was lacking. As will be pointed out, though, the standards for determining a motion for new trial and a motion for judgment as a matter of law are different, the former allowing more discretion to the trial court than the latter. As to their motion for judgment as a matter of law, on the record in the case at bar, the trial court should have exercised self-restraint; should have credited the constitutionally mandated process of jury decision; and should have denied Durdens' motion. We hold that the District Court erred in granting Durdens' motion for judgment as a matter of law, and we reverse on this issue.

II.

¶29  Did the District Court err in granting Durdens' motion for new trial?

¶30  Like the standard for considering a motion for judgment as a matter of law, the law regarding a district court's determination of a motion for new trial is well-established.  The general rule is that the decision whether to grant a new trial is committed to the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion.  Jim's Excavating Service v. HKM Associates (1994), 265 Mont. 494, 512, 878 P.2d 248, 259.  We have also stated that an order granting a new trial will be upheld if it can be sustained on any ground stated in the order or opinion accompanying the order, Giles v. Flint Valley Forest Products (1979), 179 Mont. 382, 387, 588 P.2d 535, 538, overruled on other grounds by Shannon v. Hulett (1983), 202 Mont. 205, 656 P.2d 825, and that an order granting a new trial will not be set aside as readily as an order denying a new trial since the latter ends the litigation while the former restores the parties to their respective positions before trial, Tigh v. College Park Realty Co. (1967), 149 Mont. 358, 362, 427 P.2d 57, 60 (citations omitted).

¶31  In granting Durdens' motion for new trial, the District Court concluded that defense counsel had interjected prejudicial, irrelevant and inflammatory remarks into the

proceedings
which prevented Durdens from having a fair trial of their case. According to the
court, a
litany of the topics which were referred to by defense counsel, but which were not
material
or relevant to the issues or which were not substantiated by competent expert
testimony
included:

    a.    that Mrs. Durden had a personality change due to her religion and was
            compelled to approach strangers and discuss Jesus with them;

    b.    that Mrs. Durden had a flirtatious affair with her husband's employee;

    c.    that Mrs. Durden had prior psychological problems;

    d.    that Mrs. Durden's sister worked for the law office that represented
Durdens
            and that a witness received a referral from that law office;

    e.    that a witness had testified for Durdens' counsel or had worked on similar
            cases with Durdens' counsel;

    f.    that Durdens had marital problems;

    g.    that April had prior learning problems, disabilities or behavior problems;

    h.    that home schooling for religious or other reasons is not as good for
children
            as public school and/or causes problems for children;

    i.    that Durdens' living environment was the cause of problems for the family;

    j.    that April had a prior head injury with loss of consciousness;

    k.    that April had prior genetic abnormalities and that another member of the
            family is mentally retarded; and

    l.    that April had hearing problems.

¶32  The trial court stated that during conferences in chambers, defense counsel was
asked
what doctor would testify that certain topics were supported by competent proof
under the
standards required by Montana law, and that counsel would not, or could not, give
the court
an answer.  Moreover, the District Court observed that in his opening statement and
by cross-examination throughout the trial, Chief's attorney interjected matters in
front of the jury
which were not mere errors of judgment but which were deliberately designed to
prejudice
Durdens; that this conduct, in fact, left only prejudice against them; and that the
intended

result of this behavior and conduct was achieved in that the jury found no causation despite
Durdens' evidence (which the trial court characterized as substantial and overwhelming).
The court then went on to describe various incidents of defense counsel's misconduct in
greater detail, concluding that these trial tactics were unreasonable and prevented Durdens
from having a fair trial.

¶33  Chief argues that where there is substantial evidence supporting the jury verdict, the
trial court manifestly abuses its discretion in granting a new trial. Chief points out that in
Nelson v. Hartman (1982), 199 Mont. 295, 300,  648 P.2d 1176, 1178,  we stated:

> A trial court's denial of a motion for new trial is granted greater deference than
> a motion which has the effects of nullifying a jury verdict.  This Court will not
> hesitate to reinstate the verdict which is supported by substantial evidence.

¶34  Notwithstanding, in the case at bar, the court did not grant Durdens a new trial solely
because Chief did not present substantial evidence.  Rather, the court concluded that there
was an independent basis for granting a new trial which was grounded in defense counsel's
misconduct. On that basis, we stated in Nelson that improper argument of counsel may be
the basis for granting a new trial "only when prejudice has resulted which prevents a fair
trial." Nelson, 199 Mont. at 301, 648 P.2d at 1179.  In that case we found no basis for a new
trial because the court, unlike the trial judge in the case at bar, made no finding of prejudice.

¶35  However, in Kuhnke v. Fisher (1984), 210 Mont. 114, 683 P.2d 916, we discussed
at greater length the effect of attorney misconduct (there, in the form of improper and
irrelevant comment and argument to the jury) in a case where there was conflicting but
substantial evidence on both sides.  Holding that defense counsel's conduct had prejudiced
the plaintiff's case, we stated:

> where it appears that one of the parties was prevented from receiving a fair
> trial by improper argument in summation, the question of whether substantial
> evidence supports the jury verdict in spite of the oral argument does not arise.
> The acid of the improper argument may have eaten away the substantial
> evidence presented by the plaintiff and left only prejudice against him.  When
> a party's right to a fair trial has been materially impaired by improper jury
> argument, the fact of the imperfect trial transcends the substantial but

conflicting evidence that supports the jury verdict.

Kuhnke, 210 Mont. at 125, 683 P.2d at 922.

¶36  As discussed above, it is uniquely the jury's task to weigh and resolve conflicts in the
evidence, to judge the credibility of the witnesses and to find the facts.  Nonetheless, even
where there is substantial evidence supporting the jury's verdict, the trial court has an
overriding duty to prevent a miscarriage of justice by granting a new trial where the
misconduct of counsel prevents the opposing litigant from having a fair trial on the merits.
See § 25-11-102(1), MCA; Rule 59(a), M.R.Civ.P.  See also Campeau v. Lewis (1965), 144
Mont. 543, 546, 398 P.2d 960, 962 (trial judge has power to sua sponte grant a new trial to
prevent a miscarriage of justice).  As we noted in Putro v. Baker (1966), 147 Mont. 139, 410
P.2d 717:

> The guiding principle of our legal system is fairness.  We must tenaciously
> adhere to the ideal that both sides of a lawsuit be guaranteed a fair trial.  Sec.
> 27, Art.  III, Montana Constitution [now sec.  17, Art. II].

Putro, 147 Mont. at 147-48, 410 P.2d at 722.

¶37    Thus, even though Chief  may have presented sufficient evidence to prevail against
Durdens' motion for judgment as a matter of law, the District Court was, nevertheless,
correct in granting Durdens' motion for new trial where the trial judge found that defense
counsel's misconduct prejudiced Durdens' right to a fair hearing and resolution of their case.
The trial judge is in the best position to determine the prejudicial effect of an attorney's
conduct.  Buhr v. Flathead County (1994), 268 Mont. 223, 255, 886 P.2d 381, 400, cert
denied, 514 U.S. 1110, 115 S.Ct. 1962, 131 L.Ed.2d 853 (1995) (citations omitted).  Based
upon the record here and the trial court's findings, which are supported by that record, we
conclude that the trial judge did not manifestly abuse his discretion in granting Durdens'
motion for new trial.

¶38  Without going into detail on each of its twelve specifications of misconduct, the trial
judge found that any one of several of those  incidents were grounds for reversal of the jury
verdict.  Specifically, the court ruled that there was no legitimate reason to introduce into

evidence the fact that April's uncle is mentally retarded. The court noted that no doctor or other competent medical evidence established the cause of the uncle's mental retardation or that it had any connection with April's condition and that implying that April's problems may be related to a genetic family history when no such evidence exists to support the implication was improper.

¶39 The court also concluded that defense counsel's reference to an alleged hearing problem of April not only had no relevance to any injury she suffered from the claimed CO exposure, but was unsubstantiated by any competent medical evidence as well. The trial judge also found it extremely prejudicial that defense counsel sought to appeal to the public's cynicism concerning the legal profession and personal injury victims by repeatedly seeking to introduce evidence that Mrs. Durden's sister worked for the law offices of one of Durdens' counsel and by telling the jury that "everything was directed" from that counsel's law offices. The District Court noted the lack of evidence to support this allegation or that it had any material relevance to the issues being tried.

¶40 The court found that defense counsel mentioned in opening argument and in cross-examination that a number of other patients with legal claims have been referred by Durdens' counsel to certain of the physicians who testified for Durdens--the implication being that those physicians were unworthy of belief and perhaps were part of a conspiratorial plan to bilk Chief. The trial judge observed that the physicians who appeared at trial were truthful, competent and professional in every respect; that their integrity as medical professionals was impugned by counsel's statements; and that there was no evidence supporting any conspiracy among those doctors, Durdens and their counsel.

¶41 Finally, the court concluded that Durdens' case was prejudiced by defense counsel's presentation of prior personality and psychological problems of both April and Mrs. Durden without any substantiating evidence that religion, personality, living environment, genetic condition or personal family matters had any causal link to April's and Mrs. Durden's injury claims.

¶42 Again, the trial court's findings are supported by the record, and because the trial judge is in the best position to determine the prejudicial effect of an attorney's conduct, Buhr, 268 Mont. at 255, 886 P.2d at 400, we conclude that the court did not manifestly abuse its discretion in granting Durdens' motion for new trial. Indeed, the District Court's ruling was in accord with our recent decisions in Newville v. State, Dept. of Family Services (1994), 267 Mont. 237, 883 P.2d 793 (holding that the trial court committed reversible error in allowing argument and questions regarding a variety of factors, including genetic factors, which "could contribute" to the plaintiff's injury, when no medical evidence was presented to make the causal connection more probable than not), and in Werre v. David (1996), 275 Mont. 376, 913 P.2d 625 (holding that the trial court did not abuse its discretion in excluding evidence of family conflicts, including an extramarital affair, when there was no evidence of any causal connection with those and plaintiff's mental disorders).

¶43 Finally, it is necessary that we address Chief's argument that the District Court manifestly abused its discretion in granting Durdens' motion for new trial because Durdens failed to object, request an admonition from the court to the jury or request corrective jury instructions with respect to the various testimony and incidents of attorney misconduct on which the court based its decision. Chief cites our decision in Rasmussen v. Sibert (1969), 153 Mont. 286, 456 P.2d 835, for the rule that, with respect to improper testimony and argument, a litigant's failure to object, move to strike or for mistrial, or to request an admonition or corrective jury instruction constitutes a waiver of objection and cannot be urged for the first time in a motion for new trial. Rasmussen, 153 Mont. at 294, 456 P.2d at 839-40.

¶44 While Chief's statement of the rule is accurate, its argument that the rule was not followed in this case is incorrect. The record reveals that Durdens' counsel filed various pretrial motions in limine, made contemporaneous objections, moved to exclude improper evidence and argument during trial and continued to object to Chief's questioning regarding

the same issues throughout the trial.  This is not the sort of case that we faced in Rasmussen, where counsel "did nothing."  Rasmussen, 153 Mont. at 295, 456 P.2d at 840.

¶45  Prior to trial, Durdens' counsel filed motions to exclude evidence of the medical conditions of other Durden family members without proper medical foundation and evidence that these other family members did not file claims; to exclude evidence of comparative or third party negligence; and to exclude evidence of settlement or collateral sources.  During a discussion of these matters prior to opening statements, Durdens' counsel inquired of the judge, "point of clarification, so I don't jump up, but in terms of medical evidence, we reserve, at least, the adequacy of the medical foundation as it comes in then.  Can we make those objections during trial?"

¶46  The litany of topics as described by the District Court were all brought out in Chief's opening statement at the end of the first day of trial.  While Durdens' counsel did not object during Chief's opening, counsel did file a motion the following day, prior to the start of that day's proceedings, to exclude evidence of "possible" sources of symptoms not properly based on relevant medical evidence.  At an in-chambers hearing on this matter, Durdens' counsel referred to Chief's attempt to attribute the cause of Mrs. Durden's and April's problems to, among other things, cramped living quarters, family environment, genetic abnormalities, home schooling, religious beliefs, hearing problems, and developmental delays.  The District Court Judge ruled that Durdens' counsel could object as specific questions were asked by Chief's counsel.

¶47  An extensive review of the record reveals that Durdens' counsel did repeatedly object, throughout the course of the trial, to questions posed by Chief's counsel to both lay and expert witnesses regarding: whether April had hearing and other problems at birth; whether April met the normal developmental milestones while growing up; whether April had any learning disabilities or behavioral problems prior to the CO exposure; whether there was any family history of mental retardation; whether April sustained a head injury in a fall; whether

Mrs. Durden had a personality disorder or psychological problems prior to the CO exposure; the nature of Mrs. Durden's religious beliefs and practices; the fact that Mrs. Durden's sister worked for Durdens' counsel's law firm; and the effectiveness of home schooling children. Furthermore, during the numerous in-chambers hearings on these matters, Chief's counsel was unable to lay adequate medical foundation that the matters referred to were the cause of Mrs. Durden's and April's condition.

¶48 We hold that the trial court did not manifestly abuse its discretion in granting Durdens' motion for new trial, and we affirm on this issue.

## III.

¶49 Did the District Court err in allowing Chief's medical expert, Dr. Donna Seger, to testify?

¶50 Prior to trial, Durdens filed a motion to exclude the testimony of Chief's medical expert, Dr. Donna Seger, or in the alternative, to limit her testimony to the facts and opinions that were disclosed prior to the close of discovery on July 31, 1996. After hearing argument, the District Court denied Durdens' motion to exclude Dr. Seger's testimony, but granted Durdens' motion to limit her testimony to the disclosures made in Chief's Rule 26(b)(4)(A), M.R.Civ.P., disclosures.

¶51 On cross-appeal, Durdens argue that the District Judge erred in failing to grant their pretrial motion to exclude Dr. Seger's testimony. Durdens contend that Chief failed to adequately disclose and supplement Dr. Seger's opinions and the basis for her opinions, as required by Rule 26(b)(4)(A), M.R.Civ.P., and also failed to live up to its representation that it would provide full disclosure. Finally, Durdens maintain that as a sanction, this Court should preclude Chief from calling Dr. Seger or any similar expert in the retrial of this case on damages. Chief contends that it complied with the expert-witness disclosure rule, with the court's scheduling order and that its expert-witness disclosure was as detailed as Durdens' expert-witness disclosure.

¶52 Generally, the district court judge is in the best position to determine good faith

discovery efforts, and, absent an abuse of discretion, this Court will not disturb the trial court's determinations relating to disclosure of experts and discovery in general. Lutz v. National Crane Corp. (1994), 267 Mont. 368, 381, 884 P.2d 455, 462-63. In this case, Chief filed a general disclosure on Dr. Seger on September 27, 1995. Durdens' expert, Dr. Weaver, was not deposed until July 1996. His opinion and medical records were not obtained for review by Dr. Seger until that time. Subsequently, Chief noticed Dr. Seger's deposition for August 22, 1996, however, Durdens canceled the deposition. Based on these facts, we hold that the District Court did not abuse its discretion in allowing Dr. Seger to testify.

¶53 Furthermore, as indicated above, this case is being remanded for a new trial on the issue of causation and, if causation is proven, on damages as well. We have stated that, while the grant of a new trial by a district court is not the filing of a new action and while the parties are limited to the contents of their original pleadings, the new trial must be commenced fresh or new and that the evidence and testimony of the previous trial is null and void, except when governed by existing rules of evidence. Town Pump, Inc. v. District Court (1979), 180 Mont. 358, 361-62, 590 P.2d 1126, 1128-29 (citing Waite v. Waite (1964), 143 Mont. 248, 389 P.2d 181). An order granting a new trial restores the parties to the position they occupied before the trial. Waite, 143 Mont. at 254, 389 P.2d at 185 (citation omitted).

¶54 Accordingly, on remand, the court is at liberty to allow discovery to be reopened, to compel discovery, to sanction discovery abuses and, generally, to make whatever other discovery rulings may be required or appropriate under the circumstances and which are consistent with this case being tried anew as to causation and damages.

¶55 Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/   KARLA M. GRAY
/S/   JIM REGNIER

Justice Terry N. Trieweiler specially concurring.

¶56  I concur with the majority's decision to affirm the District Court's order which granted
the plaintiffs a new trial, and to reverse that part of the District Court's order which granted
judgment as a matter of law to the plaintiffs.  In light of the decision to remand this case for
a new trial, I disagree that it was necessary to discuss whether the testimony of Dr. Donna
Seger was properly admitted in the previous trial.  However, was I to reach that issue, I
would also disagree with the majority's conclusion that much of her testimony did not violate
the rules of discovery and need not have been excluded as a sanction for that violation.

¶57  Because this case is being remanded for a new trial, the admissibility and scope of
Dr. Seger's testimony at that trial will necessarily have to be considered based on the posture
of discovery at that time.  Except as it relates to issues raised on appeal, whether evidence
was or was not properly admitted in the previous trial is irrelevant to any future proceeding,
and there is no real point to the majority's discussion of that issue.  Having said that,
however, I also conclude that the majority's discussion of Dr. Seger's testimony misses the
whole point of the plaintiffs' objection.

¶58  The majority apparently concludes that because the plaintiffs scheduled Dr. Seger's
deposition and then canceled it, the District Court did not abuse its discretion when it
allowed Dr. Seger to testify.  But it is not the plaintiffs' contention that the District Court
abused its discretion when it allowed Dr. Seger to testify.  It is the plaintiffs' contention that
the District Court abused its discretion when it first ordered that Dr. Seger's testimony would
be limited to the disclosures made by the defendant pursuant to Rule 26(b)(4)(A),
M.R.Civ.P., and then allowed Dr. Seger to testify as an expert on matters which had not been
disclosed.

¶59  For example, the defendant's expert witness disclosure gave no indication that
Dr. Seger would testify regarding the plaintiffs' psychological disorders, learning

disabilities, or possible causes, other than carbon monoxide, of their symptoms. Yet, she was allowed to do so. The defendant's expert witness disclosure gave no indication that Dr. Seger would be asked to testify as an expert psychological witness regarding the mental health of people that she had never examined, tested, nor seen. Yet, she was allowed to do so. The discovery responses which were provided by the defendant indicated that general statements about Dr. Seger's opinion and incomplete documentary evidence would be supplemented at a later date. However, supplementation was never provided. In short, the expert witness disclosures made by the defendant regarding the testimony of Dr. Seger were completely inadequate to enable plaintiffs to fully cross-examine Dr. Seger at the time of trial. Furthermore, the rules of discovery anticipate that written interrogatories and requests for production should be sufficient to discover the substance of the opinion of an opposing party's expert and that person's basis for his or her opinion. There is no right pursuant to Rule 26(b)(4), M.R.Civ.P., to depose the other party's expert without court approval. Failure to provide adequate witness disclosure certainly cannot be excused on the basis that the party which sought disclosure did not take a deposition--especially when experts such as Dr. Seger are located so far from Montana and charge fees as high as $500 an hour to share their opinions.

¶60 For these reasons, if I was to reach the issue of whether or not the District Court abused its discretion when it allowed Dr. Seger to testify to matters which had not been disclosed in the defendant's expert witness disclosure, I would hold that the District Court did abuse its discretion. I conclude that the majority first ventures into an area which is unwarranted by its disposition of the case, and then while doing so, arrives at the wrong conclusion.

¶61 For these reasons, I concur with the result arrived at by the majority, but disagree with its unnecessary discussion of the admissibility of Dr. Seger's opinions.

/S/   TERRY N. TRIEWEILER